Unora, Appellant, v. Glen Alden Coal Company.

8

Argued November 20, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*David L. Ullman,* with him *Thomas L. Kennedy, Jr.,* for appellants.

*C. A. Whitehouse,* Assistant Counsel, with him *Ralph H. Behney,* Counsel, and *Frank F. Truscott,* Attorney General, for Commonwealth, appellee.

*Franklin B. Gelder,* with him *J. H. Oliver, Gilbert S. McClintock* ·and *William J. Davis,* for Glen Alden Coal Company, appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 25, 1954:

The claimants for workmen's compensation in the three cases involved in this appeal from the Superior Court are coal miners afflicted with anthraco-silicosis, a malady listed in The Pennsylvania Occupational Disease Act* as compensable provided the disease totally disables the worker.

The Referees hearing the cases (individually) of the claimants Casper Unora, John Kalena and Frank Drozd, found, after taking the testimony of expert impartial physicians appointed by the Workmen's Compensation Board, that the claimants were totally disabled. The Glen Alden Coal Company and the Commonwealth of Pennsylvania, as defendants, appealed to the Workmen's Compensation Board which, after affirming the award to Unora, referred that case to the Medical Board appointed under Section 420 (a) of the Act of June 21, 1939. It also referred, before passing on the appeal, the two other cases (Kalena and Drozd) to the same Medical Board.

This Board, made up of three. physicians, reviewed the recorded medical testimony and declared that the claimants were only "partially disabled." The Workmen's Compensation Board, considering the cases now for the second time, announced that it was bound by

---

* Act of June 21, 1939, P. L. 566, as amended (Sec. 108k and Sec. 301-3).

the findings of the Medical Board, and, therefore, handed down a new decision denying compensation to the claimants on the ground that they were not totally disabled.

The cases were appealed to the Court of Common Pleas of Luzerne County which reversed the decisions of the Workmen's Compensation Board and sent the cases back for further action. The defendants appealed to the Superior Court which, in its turn, reversed the Court of Common Pleas of Luzerne County. The claimants then asked for an allocatur from the Supreme Court. The allocatur was granted and the claimants entered this Court on a further extension of the legal pilgrimage they began some 6 and one-half years ago. The zig-zagging journey, however, is still not ended because, in view of the decision herein to be announced, the case must now go back again to the Workmen's Compensation Board.

Section 420 (a) of The Pennsylvania Occupational Disease Act provides* that when the Workmen's Compensation Board is required to review the Referee's findings on medical questions, the Board shall refer the case to the Medical Board "for determination of the medical facts." Paragraph (d) of Sec. 402 specifies that "The medical board shall have the power *and its duty shall be to hear and determine* controverted medical issues in cases arising under this act in accordance with the provisions of section 420." (Emphasis supplied.)

Learned counsel for the claimants have filed an able and exhaustive brief on the questions presented on appeal, the most vital one being: Did the Medical Board

---

* Sections 402 and 420 of The Pennsylvania Occupational Disease Act were repealed by the Act of Jan. 2, 1952, P. L. 1811, but for the purposes of this appeal we must interpret the law as it existed when the disabilities of the claimants were incurred.

meet its procedural obligations when it disposed of the medical issue without taking testimony, without hearing argument, without asking for or receiving any additional evidence, or calling for briefs? We agree that counsel's position is well taken that the Medical Board did not fulfill its duty under the section of the Act referred to. While the Medical Board was not required to follow any rigid formality, nor even, of its own volition, to seek additional evidence, it cannot be said that it met the wording of the Act when it failed to *hear* the medical issue involved. In law, where a controversy is involved, a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially. Studying papers is not a hearing; passing on a report moving across one's desk is not a hearing. The very genius of American jurisprudence shines in the opportunity it affords every litigant to present his case openly, publicly and untrammeledly. This concept was well stated by the Supreme Court of Montana in the case of *Grant v. Michaels,* 94 Mont. 452, 23 P. 2d, 266: "The power 'to "hear and determine" is an essential ingredient of jurisdiction, and the quoted words refer to a judicial investigation and settlement of an issue of fact, which implies the *weighing of testimony offered on both sides,* from a consideration of which the relief sought by the moving party is either granted or denied.' " (Emphasis supplied.)

The failure of the Medical Board to hear the claimants or their counsel is not merely an academic error; it is one of substance. A hearing is not granted to a litigant simply to provide him with a forum for rhetorical expression. The right to be heard constitutes not only the right to talk; it includes the right on the part of the litigant to listen to what the tribunal has

to say and to offer advice and counsel. The right to be heard encompasses the right also to give ear to one's adversary and to object, if necessary.

Had counsel for the claimants and for the defendants appeared before the Medical Board it would have become evident during the argument or discussion that the Board intended to proceed, as it in fact did, on the false premise that total disability under the Act is strictly and exclusively a medical, that is to say, a physiological fact. Total disability, however, in the nomenclature of workmen's compensation proceedings imports economic as well as physical findings. Professor Arthur Larson, presently dean of the University of Pittsburgh Law School, well stated in his book on Workmen's Compensation Law (Vol. 2, Sec. 57, 10, pp. 2, 3) that: ". . . the disability concept is a blend of two ingredients, . . . . the first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything . . .

"The proper balancing of the medical and the wage-loss factors, is, then, the essence of the 'disability' problem in workmen's compensation."

In the interpretation of the Workmen's Compensation Act the word "disability" is to be regarded as synonymous with "loss of earning power." Chief Justice KEPHART expressed this proposition with praiseworthy accuracy and succinctness in *Woodward v. Pittsburgh Engineering & Construction Co.*, 293 Pa. 338, 340: "The disability contemplated by the act is the loss, total or partial, of the earning power from the injury."

A physician studying, on an anatomical chart, the malady of his patient in correlation to unaffected or-

gans and members may well conclude that the subject is only partially disabled. That same doctor could, however, come to a different conclusion if he saw the patient in the depths of a coal mine laden with heavy equipment, bent under a low ceiling, coughing from bad ventilation and slipping from insecure footing. It is obvious that a one-legged man is only partially disabled at a desk addressing envelopes but entirely *hors de combat* in a quarry carrying blocks of stone.

Thus, the determination of total disability is one which requires a consideration and weighing (in addition to the anatomical facts) of such factors as the claimant's mental outlook, his industrial background, his education, the occupation, if any, he could perform where his particular physical impairment would not be a total bar, and whether such work exists. Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability.[1] The Medical Board here, however, without the benefit of evidence and counsel that could come from the claimants and their attorneys, and without expressing any opinion on the numerous mechanical, nervous and toxic factors entering into the determination of physical disability in a silicosis case, proceeded to reverse the findings of the Referee based

---

[1] *Naughton v. Kettl*, 154 Pa. Superior Ct. 318; *Cox v. Woodlands Cemetery Co.*, 133 Pa. Superior Ct. 313; *Earley v. Phila. & Reading Coal & Iron Co.*, 144 Pa. Superior Ct. 301; *Maishock v. State Workmen's Ins. Fund*, 129 Pa. Superior Ct. 118; *Jones v. Hazle Brook Coal Co.*, 119 Pa. Superior Ct. 409; *Consona v. R. E. Coulborn & Co.*, 104 Pa. Superior Ct. 170.

on the testimony of impartial experts (that claimants were totally disabled) and concluded that the claimants were only partially disabled.

Dr. Kessler in his book, "Accidental Injuries," (2nd Ed., pp. 90-95) observes that "pathology determines the nature of the illness, but not the extent of the remaining health or the extent of adaptation of the remaining function." The Medical Board in this case based its conclusions quite obviously on pathological findings alone; nor were these findings the result of the Board's own examination. How reliable was the medical data which was the basis of the Board's conclusions? Dr. W. T. Davis, who examined Frank Drozd on behalf of the defendant Glen Alden Company, testified that in his opinion Drozd was not totally disabled, and that Drozd could do work as a road cleaner, gasoline attendant or janitor. Several months later Drozd died, and the death certificate described the cause of death to have been anthraco-silicosis!

Had the Medical Board allowed counsel for the plaintiff at least to submit a brief, it is doubtful that it would have ignored the direction laid down in the case of *Michetti v. State Workmen's Insurance Fund*, 143 Pa. Superior Ct. 458, 462, where the Superior Court said: "There is no formula that can be applied to determine the amount of the loss of earning power with exactness. It is always a question involving the exercise of sound judgment and common sense." In the application of that sound judgment and common sense, more evidence was required than that which apparently guided the Medical Board.

In reaching its conclusions as to whether the claimants had lost all earning power, the Medical Board could have profited by heeding the principles laid down by this Court in *Goodhart v. Pennsylvania Railroad Co.*, 177 Pa. 1, where it was said: ". . . loss of earning

power, is not always easy of calculation. It involves an inquiry into the value of the labor physical or intellectual, of the person injured before the accident happened to him, and ability of the same person to earn money by labor, physical or intellectual after the injury was received . . . It was also error to treat this subject of the value of earning power as one to be settled by expert testimony . . . The basis on which this calculation must rest is not the possibility, as judged of by the expert witness, but the cold, commonplace facts as proved by those who knew them."

Paragraph (c) of Section 420 provides: "After the medical board has completed its inquiry into any case submitted to it, it shall file with the board its written report setting forth its findings with respect to the following medical questions: 1. Whether or not the claimant contracted or is suffering from the occupational disease alleged, and, in death cases, whether or not death was caused by such disease. 2. If the claimant has contracted or is suffering from the occupational disease alleged, its opinion as to the extent of the disability suffered by the claimant. 3. Findings on such other medical facts as appear warranted by the evidence."

The report made by the Medical Board consisted of 3 paragraphs:

"1. It is the unanimous opinion of the Medical Board that the claimant has contracted anthracosilicosis as alleged.

2. That the claimant's physical condition caused by said anthracosilicosis disables him to the extent that he can only perform work of a limited general nature which in our opinion makes him partially disabled.

3. We further find that there is no other disease or physical condition affecting claimant's disability caused by anthracosilicosis."

With the exception of the statement that the claimant has contracted anthraco-silicosis, the Medical Board's report, like the Delphic oracles, is capable of many meanings. What is meant by "work of a limited general nature?" And what is the secret wrapped up in the enigmatic third paragraph?

The Medical Board ignored entirely the direction dictated by Section 420 (c) 3, requiring findings on "such other medical facts as appear warranted by the evidence."

The laconic and didactic quality of the Medical Board's report was apparently accepted by the Workmen's Compensation Board as presupposing a complete knowledge of the facts and a final decision on those facts. But nowhere in the Workmen's Compensation Act and all its amendments is there any suggestion that the Workmen's Compensation Board shall relinquish its ultimate responsibility for finally determining from *all* the testimony, exhibits, reports and findings whether the claimant shall receive compensation or not. Certainly it was not the intention of the Legislature to confer upon the Medical Board a power and authority superior to that vested in the Workmen's Compensation Board, and since Sections 424 and 425 of The Pennsylvania Occupational Disease Act require the Workmen's Compensation Board to permit the litigating parties to present oral and written arguments, the Medical Board could not escape the obligation of allowing at least as much.

Although the Medical Board vetoed the findings of the Referee in each claim, it did not point out or even suggest the nature of the evidence which induced it to reverse the Referee's findings.

It would be reasonable to suppose that the fact that the claimants have been unable to enter the coal mines since anthraco-silicosis struck them down would pre-

sent an important item of evidence for their consideration, but it was apparently ignored entirely by the Medical Board.*

Section 427 of The Pennsylvania Occupational Disease Act provides: "Any court before which an appeal is pending from any action of the board, may remit the record to the board for more specific findings of fact if the findings of the board or referee or of the medical board are not, in its opinion, sufficient to enable it to decide the question of law raised by the appeal."

This provision authenticates the authority of the Common Pleas Court to remit the record back to the Workmen's Compensation Board, for it was clear to the Common Pleas Court that the so-called findings of the Medical Board were not based on "sufficient, competent evidence."

In *Flucker v. Carnegie Steel Company*, 263 Pa. 113, 117, this Court said: "The compensation act, to realize the success which it deserves, must be administered, like any other system for adjusting rights between man and man, in a manner calculated to do, as nearly as humanly possible, exact justice to all concerned; and, as recently said by this court in Gurski v. Susquehanna Coal Co., 262 Pa. 1, 'the referee should make his findings of fact so comprehensive and explicit as to disclose the full story of the accident.' "

The narrow procedure followed by the Medical Board in the three cases here on appeal prevented the

---

* The competency of this kind of evidence was established in reverse in the case of *United States v. Spaulding*, 293 U. S. 498 and *Winters v. State Workmen's Insurance Fund*, 136 Pa. Superior Ct. 293, where the fact that the claimants had done some compensable work was considered as destroying the effect of a medical opinion to the effect that the claimants were totally disabled.

disclosure of the full story required in order to effectuate true justice in the cases involved.

We, therefore, reverse the order of the Superior Court and remand the cases to the Workmen's Compensation Board for proceedings in accordance with this Opinion.

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent. I would affirm on the able and persuasive opinion of Judge HIRT speaking for a unanimous Superior Court.