616 A.2d 1051

Anthony HARRELL, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD
(CIRCLE HVAC), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 13, 1991.

Decided April 15, 1992.

Publication Ordered Nov. 12, 1992.

Bruce L. Neff, for petitioner.

David L. White and Robert F. Kelly, Jr., for respondent.

Before CRAIG, President Judge, PALLADINO, J., and BARRY, Senior Judge.

PALLADINO, Judge.

Anthony Harrell (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming in part and vacating and reversing in part a referee's decision which modified Claimant's benefits to partial disability. We affirm.

Claimant sustained a back injury on August 24, 1984 while working for Circle HVAC (Employer). Claimant received

total disability benefits pursuant to a November 8, 1984 Notice of Compensation Payable.

On June 8, 1987, Employer filed a modification petition alleging that Claimant's total disability had decreased to partial disability and that work was available to Claimant within Claimant's capabilities. Claimant filed a timely answer denying that his disability had decreased. Claimant's total disability compensation continued until the referee granted a partial supersedeas in a November 3, 1987 interlocutory order reducing Claimant's compensation to partial disability.

In support of its petition, Employer presented the deposition testimony of Dr. John T. Williams, Employer's evaluating physician. Dr. Williams examined Claimant on December 16, 1986. Based upon his examination and review of medical records, Dr. Williams diagnosed Claimant as suffering from post-op lumbar laminectomy with residual absence of the left ankle jerk. Dr. Williams was of the opinion that Claimant could not return to his previous laborious work as an installer of air conditioning and heating units, but could resume work at a limited capacity with restrictions.

Employer also presented the deposition testimony of Harry Robert Stackhouse, a vocational rehabilitation counselor. Mr. Stackhouse testified that he located and informed Claimant of available job opportunities, taking into consideration Claimant's age, education, past work experience, transferable skills, geographic area, and physical restrictions. Mr. Stackhouse's testimony indicates that six of the job opportunities which he located were actually approved by Dr. Williams. Mr. Stackhouse also testified that Claimant failed to pursue several available job opportunities, and declined several job offers.

Claimant presented the deposition testimony of Dr. Jerry Ginsberg, Claimant's treating physician. Based upon his examinations of Claimant and review of x-ray reports, Dr. Ginsberg diagnosed Claimant as suffering from chronic unresolved post traumatic lumbar strain and sprain, with bulging discs at L4–L5 and scar tissue at L5–S1. Dr. Ginsberg was of the opinion that Claimant's pain would be permanent, and that Claimant's activities should be restricted.

The referee was not persuaded by Dr. Ginsberg's testimony, and chose to rely on Dr. Williams' and Mr. Stackhouse's testimony. The referee found that Claimant did not exercise good faith in following through on job referrals. The referee modified Claimant's benefits to partial disability and directed Employer to pay Claimant's litigation costs.

Claimant appealed to the Board alleging that the referee's findings were not supported by substantial evidence and were contrary to law. Employer also appealed to the Board contending that the referee erred by ordering Employer to pay Claimant's litigation costs.

The Board affirmed the modification of benefits, but vacated and reversed the assessment of litigation costs against Employer. On appeal to this court, Claimant argues that the Board erred by concluding that alternative employment was actually available to Claimant within his physical restrictions, capabilities, and vocationally relevant factors because: 1) Employer failed to sustain its burden of proving a change in Claimant's medical condition, and 2) Employer failed to sustain its burden of proving it referred Claimant to jobs that were within Claimant's physical capabilities.[1] Our scope of review is limited to determining whether an error of law was made, constitutional rights were violated, or crucial findings of fact were not supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Commonwealth Ct. 436, 550 A.2d 1364 (1988).

Where, as here, the Board does not take any additional evidence, the referee is the ultimate factfinder, whose findings, if supported by substantial evidence, will not be disturbed on appeal. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa. Commonwealth Ct. 164, 578 A.2d 83 (1990). Substantial evidence is

1. Claimant also argues within the context of his brief that the Board erred in concluding that Claimant was not entitled to litigation costs. However, Claimant failed to raise or suggest this issue within his statement of questions involved; therefore, we will not consider this issue. Pa. R.A.P. 2116(a).

any competent evidence that a reasonable mind may accept as adequate to support the findings of the factfinder. *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby and State Workmen's Insurance Fund)*, 133 Pa. Commonwealth Ct. 211, 575 A.2d 656 (1990).

■ Claimant argues that the Board erred by concluding that work was actually available to Claimant because Employer failed to meet the first two requirements of *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). *Kachinski* sets forth a four part test to determine whether work is available to a claimant:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

■ Claimant asserts that Employer failed to meet the first requirement of *Kachinski* because Employer did not produce medical evidence of a change in condition. However, Dr. Williams clearly stated the following opinion in his deposition testimony with respect to Claimant's disability status:

I feel that he is able to be gainfully employed in less laborious-type of work. I would not recommend that he return to his previous employment as an installer of air conditioners and heating units. He can work with certain restrictions. I do not feel that he do [sic] any commercial driving. I do not feel that he should climb ladders. Bending should be limited to maybe 10 to 12 times an hour. He

is able to lift 50 pounds and twisting motions should be avoided. Overhead work should be avoided.

June 22, 1988 Deposition of Dr. John T. Williams at 33.

The referee accepted this deposition testimony of Dr. Williams, and this testimony is sufficient to satisfy the first requirement of the *Kachinski* test.

■ As to the second requirement, Claimant argues that he was not apprised of medical approval for the job opportunities offered by Mr. Stackhouse, and was not offered jobs that were within his physical capabilities. According to *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa. Commonwealth Ct. 479, 568 A.2d 981 (1989), it is implicit within the second requirement of *Kachinski* that a claimant be apprised of his medical clearance so that he may faithfully pursue any appropriate job referrals. However, it is not necessary to obtain medical clearance for each job referral; Claimant need only be apprised of medical approval for a category of positions. *Lukens.*

■ Specifically, Claimant argues that the letters from Mr. Stackhouse which notified Claimant of available job opportunities failed to inform Claimant that the jobs were within the category of positions medically approved. However, an examination of the letters reveals just the opposite.[2] A June 25, 1987 letter to Claimant from Mr. Stackhouse states in its introductory paragraph, "[n]oting your prior work experience and the restrictions placed on you as of February 1987, the following positions have been found available."[3] Therefore, Employer has met this implicit requirement of *Kachinski.*

■ Claimant also contends that Employer failed to satisfy the second *Kachinski* requirement because Employer's efforts to return Claimant to the work force were not in good faith. Claimant argues that Employer took a "scattershot" approach to job referrals with "utter disregard" for whether the refer-

2.  These letters were attached to Mr. Stackhouse's deposition testimony as exhibits and were not objected to by Claimant's counsel.

3.  Mr. Stackhouse received Dr. Williams' report concerning Claimant's physical restrictions in February of 1987.

rals had been approved by Dr. Williams. However, as previously stated, it is not necessary to obtain medical clearance for each job referral, medical approval is needed for only a category of positions. *Lukens.* Mr. Stackhouse specifically testified that he utilized Dr. Williams' restrictions and recommendations in all of his job searches. February 18, 1988 Deposition of H. Robert Stackhouse at 36. In addition, Mr. Stackhouse provided Claimant with at least six available job opportunities within Claimant's vocational abilities which were specifically approved by Dr. Williams. Referee's Decision at 3. We, therefore, conclude that Employer made a genuine and good faith effort to return Claimant to employment.

As the court in *Kachinski* pointed out, it is the referee's duty to determine, from the medical and vocational evidence presented, whether a claimant is able to perform the jobs in question. Here, the referee found as a fact that Claimant was particularly suited for two positions which were available and promptly provided to Claimant, but which Claimant failed to pursue. This finding is supported by the testimony of Mr. Stackhouse. Therefore, the Board did not err by concluding that Employer met its burden of proving that alternative employment was actually available to Claimant within his physical restrictions, capabilities, and vocationally relevant factors.

Accordingly, we affirm the Board.

## ORDER

AND NOW, April 15, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

BARRY, Senior Judge, dissenting.

The majority's conclusion that the employer, Circle HVAC (CHVAC), made a genuine, good faith effort to return the claimant, Anthony Harrell (Harrell), to the work force is erroneous. We should hold that the employer has failed its

16

burden of proof on the second point of the four step *Kachinski* test and reverse.

Our Supreme Court recognized that any effort to rehabilitate a claimant receiving workmen's compensation disability benefits is doomed to failure unless both sides, claimants and employers, proceed in good faith. *See, Kachinski,* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987) ("Obviously, the viability of this system depends on the good faith of the participants.") The stringent standard by which the good faith of claimants is measured is clear. A claimant who fails to follow through on a single valid job referral acts in bad faith. *Beres v. Workmen's Compensation Appeal Board (Lawson's Convenience Store),* 140 Pa.Commonwealth Ct. 497, 593 A.2d 939 (1991). It is also clear that the final determination of whether a position is actually within a claimant's capabilities, and thus available, is for the referee. *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Co.),* 516 Pa. 256, 532 A.2d 382 (1987). These two principles combine to require a claimant to pursue every position referred by the employer. Claimants who refuse to follow up on any job referral run the risk that their benefits will be modified or terminated if a referee subsequently determines that the referred position was within their capabilities.

Under the four step test announced in *Kachinski,* however, the issue of the claimant's good faith does not arise until the employer has produced evidence of a change in condition and a referral within the claimant's capabilities. *See Kachinski,* 516 Pa. at 252, 532 A.2d at 830 (indicating that the burden of proof shifts to the claimant only after the employer has produced evidence on the first two steps). The majority treats the employer's obligation to act in good faith as an implicit requirement of the valid job referral portion of the employer's burden of proof. I agree that it is the employer's obligation to prove its own good faith before the burden shifts to the claimant. The employer initiates the rehabilitation effort in the overwhelming majority of cases. If an employer acts in bad faith, the entire subsequent chain of events is colored by the employer's actions.

When concluding that Mr. Stackhouse, CHVAC's rehabilitation expert, acted in good faith in the case at hand the majority relies upon the following facts: At least six of the jobs referred were within Harrell's physical capabilities. Mr. Stackhouse testified that he considered Dr. Williams' restrictions and recommendations in all job searches. To complete the picture, I would add the following facts which were conceded by Mr. Stackhouse: Despite the availability of aptitude testing at Mr. Stackhouse's firm and the admitted appropriateness of such testing in the rehabilitation process, no tests were administered to Harrell. (Stackhouse Deposition [S.D.], 5/2/88, pp. 93–95.) Rather, the assessment of Harrell's job capabilities was based upon the medical reports of Drs. Hoffman and Williams and a 90 minute interview with Harrell (S.D., 5/2/88, pp. 92, 98–99).

Mr. Stackhouse generally described the methods he used to locate potential openings for Harrell as follows:

Generally I just perused the labor market. In that respect it might be establishing contacts with an employer directly; of course, noting publications for advertised openings be it in a trade magazine, a newspaper, that kind of thing; also establish a phone contact with various employers in an effort to inquire about their possible openings.

(S.D., 2/18/88, p. 19.) When cross-examined about how specific opportunities were located, however, Mr. Stackhouse could not identify one position which had been identified other than by reading the help wanted ads in the local newspapers. (S.D., 5/2/88, pp. 83–87.)

Dr. Williams, one of CHVAC's examining physicians, indicated that commercial driving was inappropriate for the claimant. Dr. Hoffman, another examining physician employed by CHVAC, restricted Harrell from commercial driving. Mr. Stackhouse was aware that this activity was outside Harrell's medical limitations as stated by both Doctors. (S.D., 5/2/88, pp. 98–99.) Despite this knowledge and his professed use of the medical restrictions and recommendations in the job search, Mr. Stackhouse referred Harrell to job openings at four different courier services. (S.D., 2/18/88, pp. 34–47.)

Those courier service positions involved commercial driving and Mr. Stackhouse was aware that such driving was required when he referred Harrell to the positions. (S.D., 5/2/88, pp. 96–99.)

Mr. Stackhouse located a possible job opening for Harrell at the Insigner Machine Co.; upon initial contact with the company, Mr. Stackhouse did not adequately describe Harrell's medical limitations. (S.D., 5/2/88, pp. 84–85.) Mr. Stackhouse referred Harrell to Insigner and was subsequently informed that Insigner did not believe that Harrell was an acceptable candidate for the position. (S.D., 5/2/88, p. 84.) Mr. Stackhouse never informed Harrell of Insigner's position, stating that he wanted "to give Mr. Harrell the benefit of the doubt, . . . ." (S.D., 5/2/88, p. 85.)

I believe this conceded course of conduct by CHVAC constitutes bad faith. The *Kachinski* Court cited *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104 (1954), when noting that an employer must tailor its job referrals to the disabled claimant's abilities. *Kachinski*, 516 Pa. at 252, 532 A.2d at 380. *Unora* describes the close fit that is required as follows:

> [A] consideration and weighing (in addition to the anatomical facts) of such factors as the claimant's mental outlook, his industrial background, his education, the occupation, if any, he could perform where his particular physical impairment would not be a total bar. . . .

*Unora*, 377 Pa. at 13, 104 A.2d at 107. It is these factors, over and above the medical restrictions, which aptitude tests are designed to measure. Yet despite their admitted availability, CHVAC, through Mr. Stackhouse, chose not to give Harrell the benefit of such tests in this rehabilitation effort.[1] Without

---

1. The *Unora* Court also noted that positions which are appropriate for disabled claimants are not easily located, colorfully referring to them as "employment plums that do not often dangle from the tree of everyday economics". *Unora*, 377 Pa. at 13, 104 A.2d at 107. While I recognize that help-wanted ads are a legitimate source of available positions, I question whether the overwhelming reliance on such ads which admittedly occurred here represents an adequate search for such rare opportunities.

an accurate analysis of these other factors, CHVAC could not appropriately tailor the job referral as required by *Kachinski.*

More importantly, Mr. Stackhouse admittedly referred Harrell to a number of jobs involving duties which had been prohibited,[2] or listed as not recommended,[3] by CHVAC's examining physicians. I fail to see how such referrals can be considered good faith. Based upon the knowledge available to CHVAC at that time,[4] it is obvious that the restrictions and recommendations of those examining physicians were disregarded when the referrals to the courier service positions were made. At a minimum, good faith obligates CHVAC to abide by the limitations imposed by its own medical experts.

Finally, the referral to the position at Insigner Machine Co. cannot be construed as a good faith effort to return Harrell to productive employment as required under *Kachinski.* Accepting Mr. Stackhouse's testimony at face value, he referred Harrell to a position before it was determined that the position was appropriate given Harrell's medical limitations. Then he failed to inform Harrell that Insigner deemed him an unacceptable candidate. Once Mr. Stackhouse was aware of the stance taken by Insigner, he knew that any application for the

2. By Dr. Hoffman.

3. By Dr. Williams.

4. As noted above, the ultimate determination of whether or not a referred position is within a claimant's abilities lies with the referee. Knowledge of the result of such determinations is not available at the time the referrals are made. The determination of whether or not the employer acts in good faith, however, must be made by viewing its actions in light of its knowledge at the time of those actions. To measure good faith based upon the referee's decision on the appropriateness of the referral would vitiate the tailoring requirement of *Kachinski.* An employer could refer a claimant to any position and argue that such a referral was not bad faith because, until the referee made the decision, they could not know that the referral was beyond the claimant's capabilities. Nor is the use of such a time frame unreasonable in light of how the good faith of claimants is measured. As noted above, a claimant must follow up on every job referral or run the risk of subsequent modification or termination. Measuring the employer's good faith by the knowledge available at the time of referral should result in all such referrals being at least arguably within the claimant's capabilities. We can then measure the claimant's good faith and willingness to return to the work force by their response to arguably appropriate referrals.

position made by Harrell was doomed to failure. Rehabilitation consists of locating appropriate potential opportunities to return the disabled claimant to productive work. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380. Given Insigner's position, any follow up on this referral by Harrell would have been a wild goose chase.

It could be argued that the failure to provide aptitude testing, or the almost exclusive reliance on the help-wanted ads, standing alone, do not demonstrate bad faith. It is less arguable that multiple referrals to positions which involve duties exceeding the medical recommendations of CHVAC's own physicians, considered in a vacuum, could be construed as good faith. The referral to the Insigner position before it had been determined appropriate and subsequent failure to disclose the information regarding Insigner's determination that Harrell was an unacceptable candidate for the position is equally suspect. If one failure to follow through on a valid job referral by a claimant constitutes bad faith, the conduct conceded by CHVAC, whether considered in isolation or as a whole, must constitute bad faith. Our Supreme Court has condemned such sham rehabilitation as "a mere attempt to avoid paying compensation." *Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

In summary, the record, read as a whole, indicates that CHVAC acted in bad faith. An employer who acts in bad faith cannot meet its burden of proof on the second step of the *Kachinski* test. The issue of the claimant's good faith does not arise until the employer presents evidence satisfying the first two requirements. I would reverse the decision and deny CHVAC's petition. The decision of the Board should be reversed and CHVAC's petition should be denied.