658 A.2d 766

**John W. HARLE**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (TELEGRAPH PRESS, INC.)**

**Appeal of TELEGRAPH PRESS, INC. and Kansas
City Fire and Marine Insurance Company.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided May 16, 1995.

Reargument Denied July 19, 1995.

Robert P. Reed, Harrisburg, for Telegraph Press.

David F. Tamanini, Harrisburg, for J.W. Harle.

Norman R. Haigh, Secty., for W.C.A.B.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

ZAPPALA, Justice.

Does the Workers' Compensation Act permit termination of benefits where a claimant is capable of performing his pre-injury job without restrictions despite minor residual physical effects from the injury? May benefits be terminated or suspended where, following the employer's cessation of business, such a claimant begins working for a different employer, performing the same duties as his pre-injury job, at a lower wage? These are the questions raised in this appeal.

John W. Harle was employed as a pressman with Telegraph Press, Inc. While working on October 12, 1987, he cut and fractured his left thumb. As a result, he received total disability payments of $359.40 per week based on an average weekly wage of $539.10, pursuant to a notice of compensation payable.

Harle's treating physician released him to return to light duty work on March 28, 1988. He released him to full duty with no restrictions on April 22, 1988. Telegraph Press, however, had ceased conducting business in February of that same year. In August of 1988, a termination petition was filed

on behalf of Telegraph Press and its insurance carrier, asserting that Harle's disability had ceased.

In deposition testimony taken in May and June of 1989, Harle's physician testified that he had seen Harle in March of that year. Although Harle complained about discomfort and stiffness in his left hand and wrist, examination showed a full range of motion at the wrist and where the thumb joins the hand, and good though slightly reduced range at the thumb joint where the injury had occurred. The doctor expressed his opinion that Harle should be able to perform the duties described to him as being incident to employment as a pressman.

At a hearing in July of 1989, Harle testified that he continued to experience pain in his wrist when performing heavy duties, and had problems grasping some tools. He acknowledged that he had begun working for Directory Printing Company in September of 1988, was laid off from January 30 through May 5, 1989, and had not lost any working days because of the thumb injury since then. He also indicated that he had worked for two weeks during the layoff period with a printing company of which he is part-owner. Harle testified that his hourly wage at Directory Printing was $11.50, roughly $2.00 per hour less than his wage at Telegraph Press.

The referee [1] found the physician's testimony to be credible and determined in his conclusions of law that "all claimant's disability relative to the injury of October 12, 1987 has ceased." He ordered termination of benefits as of April 22, 1988. The Board affirmed, stating that the substance of the doctor's testimony was that all work-related disability had ceased, even if he failed to use those "magic words." Commonwealth Court, however, reversed and remanded for a determination of partial disability benefits.

The court, citing *Rogers Motor Lines v. Workmen's Compensation Appeal Board (Baker)*, 144 Pa.Commw. 493, 496,

---

1. Subsequent to the hearing in this case, Workmen's Compensation Referees were redesignated as Workers' Compensation Judges, Act 44 of 1993, § 14, 77 P.S. § 701 (Supp.1994).

601 A.2d 934, 935 (1992), stated that "[a] termination petition may only be based upon a properly supported finding 'that the claimant's disability has entirely *ceased.*' " (Emphasis in original). Highlighting the doctor's testimony that Harle continued to have a reduced range of motion in the thumb joint, the court concluded that there was not substantial evidence to support the findings necessary for a termination of benefits.

Commonwealth Court then proceeded to examine whether the employer might be entitled to any form of relief other than termination of benefits. The court stated that where "an employee can return to his pre-injury position, but . . . continues to suffer some residual impairment, a suspension of benefits is proper because the medical disability does not manifest itself in a loss of earnings." 155 Pa.Commw. 556, 562, 625 A.2d 751, 754, citing *Hawkins v. Workmen's Compensation Appeal Board (Medical College of Pennsylvania)*, 138 Pa. Commw. 180, 587 A.2d 387 (1991). The court further stated that where the pre-injury position is not available, however, "a suspension of benefits is not warranted because the employer has not proven the necessary element of job availability." 155 Pa.Commw. at 563, 625 A.2d at 754, citing *Zimcosky v. Workmen's Compensation Appeal Board (United States Steel Corp.)*, 118 Pa.Commw. 209, 544 A.2d 1106 (1988).

The court treated this case as a "hybrid" of these two situations, because although the medical evidence indicated that Harle could return to his pre-injury employment, and although his pre-injury position was no longer available, Harle admitted that he had obtained a similar position elsewhere, albeit at a lower wage. This admission obviated the need for the employer to produce evidence of job availability. Thus the court found that modification of benefits to partial disability was the appropriate remedy, and remanded for calculation of benefits based on the difference between Harle's pre-injury wages and his current wages.

On appeal to this Court, the employer argues that the Commonwealth Court's analysis is inconsistent with the long-standing interpretation that the disability that entitles a per-

son to benefits under the Workmen's Compensation Act is synonymous with "loss of earning power." See *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994); *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987); *Unora v. Glen Alden Coal Company*, 377 Pa. 7, 104 A.2d 104 (1954). The employer contends that even if there is a "residual physical impairment" or "medical disability," a claimant should not continue to receive benefits if there is no longer any loss of earning power attributable to the work-related injury. Otherwise, benefits are simply a wage supplement for a worker who by chance is recovering from an injury at the time his employer ceases doing business but later obtains full-time employment, which for reasons unrelated to the injury pays a lower wage. We agree.

The flaw in the Commonwealth Court's reasoning derives from a misreading of *Zimcosky*, which in turn was based on our Court's decision in *Kachinski*. In *Kachinski*, we assigned to the employer the burden of proving the availability of work within the employee's physical limitations when the employer seeks modification of benefits. We further clarified that "availability" means "actual availability," and adopted the Commonwealth Court's explanation that

> a position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 91 Pa.Commw. 543, 546, 498 A.2d 36, 38–39 (1985). Our Opinion dealt entirely with what an employer had to prove and whether the employer in that case had introduced sufficient evidence to meet its burden. Other than to indicate generally that modification of benefits would be in order, the Opinion did not discuss the ultimate ramifications of the employer's meeting its burden. Such issues were not presented in the case.

In *Zimcosky,* the employer "presented absolutely no testimony as to work availability in claimant's department, at its mill, *or at any other job."* 118 Pa.Commw. at 212, 544 A.2d at 1107 (emphasis added.) Moreover, it was apparent from the record that the claimant's pre-injury job was unavailable due to a departmental closing and a mill-wide layoff. Therefore, despite the medical evidence that the employee was physically capable of working, there was no record evidence of actual work availability. This would have been sufficient reason to deny the suspension of benefits consistent with *Kachinski.*

Actual work availability, however, is only one of the considerations affecting the modification question. Although the analysis in *Kachinski* and *Zimcosky* could stop there because the evidence in those cases was such that the remaining issues did not arise, in the present case those issues are squarely presented. Commonwealth Court neglected to address those issues, noting only that the fact of the claimant's employment obviated the employer's burden of proving actual work availability. The court simply assumed that *any* difference between pre-injury and post-injury earnings constituted the base for determining partial disability benefits, without responding to the employer's argument that such benefits are only appropriate where the difference is related to the injury.

The provision governing benefits for partial disability is Section 306(b) of the Act, as amended, 77 P.S. § 512. It provides in relevant part

> For disability partial in character ... sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine [77 P.S. § 582], and the earning power of the employe thereafter.... The term "earning power," as used in this section, shall in no case be less than the weekly amount which the employe receives after the injury, and in those cases in which the employe works fewer than five days per week for reasons not connected with or arising out of the disability resulting from the injury shall not be less than five times his actual daily wage as fixed by the day, hour, or by the output of the employe....

We find it significant that the legislation states that " 'earning power' ... shall in no case be *less* than the weekly amount which the employe receives after the injury...." (Emphasis added.) The inference suggested by this language is that "earning power" can, in some cases, be more than the employee is receiving in actual wages after the injury. In other words, benefits for partial disability are based on the difference between pre-injury earnings and post-injury earning power, not post-injury earnings, although in no case can the difference be greater than the difference between pre-injury earnings and post-injury earnings.

Pursuant to this reading of the statute, an employee whose earning power is no longer affected by his work-related injury is no longer entitled to partial disability benefits, even though his earnings may not match his pre-injury earnings. This view is supported by the remaining statutory language quoted above, which indicates that where "the employee works fewer than five days per week *for reasons not connected with or arising out of the disability resulting from the injury* [earning power] shall not be less than five times his actual daily wage." (Emphasis added.) Thus if a worker is able to secure employment that, not because of limitations caused by the injury but for other reasons, is only part-time, his "earning power" is calculated as though he were employed full-time.

Similarly, Section 413 of the Act, as amended, 77 P.S. § 772, which authorizes modification, reinstatement, suspension, or termination of benefits, contains a proviso

That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to injury.*

(Emphasis added.)

We note that Section 413, unlike section 306(b), is drafted in terms of the employee's post-injury *earnings* being equal to or

greater than his pre-injury wages, and it being shown that the loss in *earnings* does not result from the disability due to injury. Despite this discrepancy, we perceive in both sections a legislative intent that benefits for partial disability are payable to remedy loss caused by a work-related injury but are not payable if the loss is due to factors other than such injury.

For the foregoing reasons, we hold that Commonwealth Court committed an error of law in remanding this case for computation of partial disability benefits. The referee's findings of fact, which were based on substantial evidence, supported his conclusion "that all claimant's disability relative to the injury of October 12, 1987, has ceased." Given Harle's testimony that he was employed full-time and had not lost any work time due to the injury, it can be concluded that any difference between Harle's pre-injury wages and post-injury earning power was due to factors other than the injury to his thumb.

■ Commonwealth Court was correct, however, in ruling that termination of compensation was inappropriate. In light of the testimony of the physician, which the referee deemed credible, that Harle continued to experience residual physical impairment from the injury, suspension of benefits is the appropriate remedy. This allows for the possibility that if Harle's earning power at some time in the future is affected by the residual impairment from the injury, he may seek reinstatement of partial disability benefits by proving only that the injury giving rise to the original claim continues and that his earning power is once again adversely affected by the injury. See *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990).

To the extent that it remanded for the calculation of partial disability benefits, the Order of the Commonwealth Court is vacated. The matter is remanded to the Board, with instructions that the claimant's benefits be suspended.

PAPADAKOS, J., did not participate in the decision of this case.

NIX, C.J., files a concurring and dissenting opinion.

MONTEMURO, J., is sitting by designation.

NIX, Chief Justice, concurring and dissenting.

I agree with the majority that the employer was not entitled to a termination of the employee's benefits in light of credible testimony that Appellee continued to suffer residual impairment as a result of his work-related injury. However, I must dissent from the majority's holding that Appellee is not entitled to partial disability benefits for the reasons that follow.

In *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), this Court set forth the requirements necessary for an employer to successfully modify the benefits of an employee. The employer must produce medical evidence of a change in the employee's condition and must then produce evidence of a referral or referrals to an open job or jobs which the employee has been medically cleared to perform. *Id.* at 252, 532 A.2d at 380. The burden then shifts to the employee to show that he or she has made a good faith effort in following through on the referral(s). *Id.* If no job results, the employee's benefits should continue. *Id.* In the instant case, the employee was receiving benefits when the employer petitioned to have them terminated. However, the employer was not able to show that the employee's work related injury had ceased. Therefore, a termination was not appropriate, and the employer continued to bear the burden of showing job availability as required by *Kachinski.* The fact that Appellee sought work on his own should not relieve the employer of its responsibility to pay partial disability benefits to an employee who has not fully recovered from his or her work injury. To do so provides a disincentive to an employee who would otherwise seek out alternate employment on his or her own. Under the majority's analysis, the instant employee would have been better off if he had not found a job. If that were the case, the employer

would have had to continue paying total disability benefits until the employer referred the employee to a position which resulted in a job.

In *Zimcosky v. Workmen's Compensation Appeal Bd. (United States Steel Corp.)*, 118 Pa.Commw. 209, 544 A.2d 1106 (1988), Zimcosky was released to his pre-injury position after suffering a work injury; however, his position was no longer available due to a departmental shutdown. The employer failed to present any testimony regarding work availability. The court rejected the employer's argument that it was not required to show work availability because Zimcosky was released to his pre-injury position which was unavailable due to its elimination. The court, as required by *Kachinski*, "impose[d] the burden of proving work availability upon [the] employer where the claimant retains some residual disability and where the employer has eliminated the job position to which the claimant was to return." *Zimcosky* at 213–14, 544 A.2d at 1108.

An employee is entitled to a percentage of the difference between his average weekly wage and his earning power. Section 512 of the Act provides for the payment of partial disability benefits. 77 P.S. § 512. "The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employee receives after the injury...." *Id.* In the instant case, Appellee had not fully recovered from his work injury, and he returned to a position where the weekly amount he was receiving, his earning power, was less than his pre-injury average weekly wage. The majority points out that an employee's " 'earning power' can, in some cases, be more than the employee is receiving in actual wages after the injury." Op. at 488. However, the language of section 512 sets forth the situation where one's earning power is more than the wages one actually receives: "[I]n those cases in which the employe works fewer than five days per week for reasons not connected with or arising out of the disability resulting from the injury shall not be less than five times his actual daily wage...." In other words, where an employee

chooses to work part-time when he is capable of working full-time at an available position, his earning power is what he would receive in wages if he were working full-time. The instant employee is not encompassed by this portion of section 512; therefore, his earning power is the weekly amount he receives at his new position. Because this amount is less than what he had been earning at his pre-injury position, he is entitled to the difference between these two amounts as set forth by section 512.

The majority also cites section 772 in support of its position that Appellee is not entitled to payments. However, the cited language does not contemplate the situation presently before us. Rather, it refers to an employee who has returned to a position paying wages that are at least as great as his or her pre-injury wages and who then seeks to have payments under the original award resumed. In that situation, payments will only be resumed if the employee suffers a loss of earnings due to his or her work-injury. Appellee has not returned to a position paying at least as much as his pre-injury position, nor is he attempting to have previously altered benefits reinstated; therefore, section 772 is not applicable to the instant case.

Because Appellee continues to experience a physical manifestation of his work-related injury and has not returned to a position with an earning power at least as great as his pre-injury wage, I would affirm the Commonwealth Court's Order remanding this matter for calculation of partial disability benefits. Therefore I dissent.