**CONSOL PA COAL COMPANY – ENLOW FORK MINE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WHITFIELD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 5, 2008.
Decided Jan. 8, 2009.
Ordered Published March 10, 2009.

Toni J. Minner, Pittsburgh, for petitioner.

Eric P. Betzner, Washington, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Consol PA Coal Company—Enlow Fork Mine (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision denying Employer's Petition to Suspend Workers' Compensation Benefits (Suspension Petition). At issue in this case is whether Employer has an obligation to provide evidence of work availability when Claimant is released to any employment without conditions.

Thomas Whitfield (Claimant) sustained a workplace injury on April 30, 2005. Employer issued a Notice of Compensation Payable (NCP) on May 16, 2005, describing the injury as a "fracture" of the "left forearm." (NCP). Claimant underwent treatment with Christopher C. Schmidt, M.D., including surgeries to the arm. On August 10, 2006, Dr. Schmidt released Claimant, without restriction, to full-duty work. Based on this release, Employer filed its Suspension Petition. The WCJ

conducted hearings in the matter and Employer's sole witness was Dr. Schmidt, testifying through deposition. Claimant testified on his own behalf and presented no additional witnesses.

Dr. Schmidt testified that he released Claimant "without restrictions" to "whatever [work Claimant] wanted to do, full duty." (Schmidt Dep. at 12.) Additionally, Dr. Schmidt testified that he would "reconsider those restrictions" and reevaluate Claimant if Claimant had problems with work. (Schmidt Dep. at 12, 20; WCJ Decision, Findings of Fact (FOF) ¶ 5(*l*).) Claimant testified that, while he is aware of Dr. Schmidt's release, he believes that he is not able to return to work. Additionally, Claimant testified that it was his understanding that his position was no longer available because his employer has a policy of firing employees who are away from their position for more than one year, but he has not been formally notified that Employer has terminated his employment. (WCJ H'rg Tr. at 19–20, September 21, 2006; FOF ¶ 4(h).) Employer presented no evidence of work availability. Employer also did not dispute that Claimant was no longer employed by Employer.

The WCJ made the following relevant findings:

8. I accept the testimony and opinions of Dr. Schmidt as credible as his testimony is uncontradicted.

9. With the exception of where his testimony conflicts with the credible medical evidence, I accept the testimony of claimant as credible.

10. In terms of any residuals from the work injury, I find that claimant was capable of returning to any work without restriction as of August 10, 2006.

11. Employer did not offer any evidence to show that a job was made available to claimant.

(FOF ¶¶ 8–11.) The WCJ relied on *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 747 A.2d 850 (2000), for the principle that "an employer is required to show job availability in a case where the claimant has been released to return to his pre-injury job without restrictions." (WCJ Decision, Conclusions of Law (COL) ¶ 1.) The WCJ distinguished the case of *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), "because in that case the claimant had actually returned to work with a new employer." (COL ¶ 1.) Because Employer presented no evidence regarding available jobs, the WCJ denied the Suspension Petition.

Employer appealed to the Board and the Board affirmed. In doing so, the Board concluded that the WCJ correctly relied on *Landmark*. The Board reasoned that "our research has revealed no cases which alleviated the defendant from demonstrating job availability through a mere showing of increased capacity, regardless of how great that capacity may be." (Board Op. at 5.) The Board similarly distinguished the *Harle* case as "holding that a showing of job availability was unnecessary where the claimant was already performing his pre-injury position with another employer." (Board Op. at 5.) Employer subsequently filed a Petition for Review with this Court.

In its Petition for Review, Employer avers that the WCJ and the Board erred: (1) "as a matter of law in requiring Employer to provide evidence of work availability where Employer has proven that Claimant no longer has a loss of earning power attributable to the work-related injury" (Petition for Review ¶ 3(B)); and (2) because "Defendant–Employer[ ] [does not have the] duty to [both] pay an injured claimant indemnity benefits until he recov-

ers from the injury [and] also try to reintroduce Claimant into the workforce." (Petition for Review ¶ 3(E)).)

■■■ "Appellate review of a workers' compensation matter is limited to determining whether there has been a constitutional violation, an error of law, a violation of Board procedure and whether necessary findings of fact are supported by substantial evidence." *Landmark*, 560 Pa. at 622, 747 A.2d at 852. In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987), the Pennsylvania Supreme Court set forth procedures governing the employer's burden of proof in connection with a modification petition. The Supreme Court wrote:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 251–52, 532 A.2d at 379–80. "The word 'disability' is to be regarded as synonymous with 'loss of earning power.'" *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 12, 104 A.2d 104, 107 (1954); *see also* Section 306(b) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.[1] Thus, the employer bears the burden of establishing claimant's earning power. *Edwards v. Workers' Compensation Appeal Board (MPW Indus. Serv., Inc.)*, 858 A.2d 648, 652 (Pa.Cmwlth.2004). The Supreme Court has noted that:

A "suspension of benefits" is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation.

*Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 33, 584 A.2d 301, 304 (1990).

Employer argues that "[t]here is no residual disability in the present case, i.e., loss of earning power attributable to the injury and therefore, there is no burden on Employer to establish suitable employment for Claimant." (Employer's Br. at 12–13.)[2] Employer distinguishes *Land-*

---

1. Section 306(b), in pertinent part, states:

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. . . . If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require

the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

77 P.S. § 512(2).

2. Employer relies, in part for this argument, on *Unora v. Glen Alden Coal Company*, 377 Pa. 7, 104 A.2d 104 (1954), and its holding that "the word 'disability' is to be regarded as synonymous with 'loss of earning power.'"

Employer does acknowledge that Claimant is not fully recovered. (*See* WCJ Hr'g Tr. at

*mark*, arguing that in that case the claimant was only released to his "pre-injury" job; whereas, in this case, he was released to "any" position. Employer also argues that the present case is more akin to *Harle* than to *Landmark*, and that *Harle* supports Employer's position. In addressing this argument, we will review each of the two primary cases relied on by the parties.

In *Harle*, the question raised was whether or not benefits may "be terminated or suspended where, following the employer's cessation of business, such a claimant begins working for a different employer, performing the same duties as his pre-injury job, but at a lower wage." 540 Pa. at 483, 658 A.2d at 767. The claimant, in that case, was injured and eventually released "to full duty with no restrictions." *Id.* The employer, however, had eliminated his job due to a departmental closing and a mill layoff. Our Supreme Court held that a claimant is not entitled to receive benefits if loss of earning power was not attributable to his work-related injury. *Id.* at 486, 658 A.2d at 768. "Otherwise, benefits are simply a wage supplement for a worker who by chance is recovering from an injury at the time his employer ceases doing business but later obtains full-time employment, which for reasons unrelated to the injury pays a lower wage." *Id.* at 486, 658 A.2d at 768. The Court concluded that, since Claimant's loss of earning power was attributable to the change in Employer's economic conditions and not to Claimant's injury, Claimant was not entitled to benefits.

In *Landmark*, the Supreme Court rejected this Court's determination that "[w]here a claimant is capable of returning to his or her pre-injury job without restric-

tions, employer is entitled to a suspension of benefits even though employer has not established job availability." 560 Pa. at 622, 747 A.2d at 852 (quoting *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, No. 2393 C.D. 1997, slip. op. at 4 (Pa.Cmwlth., Filed Oct. 14, 1998).) In reversing that determination, our Supreme Court stated as follows:

> This Court [in *Harle*] ... did not need to focus on the job availability requirement of *Kachinski* because job availability was not at issue. **The very distinct issue before the Court was whether a residually injured employee *who returns to identical employment*** should receive partial disability benefits because his wages are less in his current employment.... In *Harle*, the employee's lost wages were not attributable to his work-related injury because he was performing an identical job. Thus, because Harle's loss of earnings was a result of factors other than his work injury, i.e., the economic reality that his previous employer went out of business, we held that awarding partial disability benefits under the facts of that case would be improper.

The holding of *Harle* is founded on the employee's return to a position identical to his pre-injury position. **To read *Harle* to allow for the modification of benefits simply upon a showing that an employee can return to his previous position without restriction is inappropriate.** Demonstrating that an employee *can* return to his or her pre-injury position is quite different from demonstrating that an employee *did* return to a position identical to his or her pre-injury position. The second show-

---

22, September 21, 2006 (Employer's counsel stated that "I'm not saying he's fully recovered, we didn't file for a Term.").) However,

Employer argues that, based on Dr. Schmidt's release, Claimant has not suffered a loss of earning power.

ing establishes actual job availability, but the first does not.

Furthermore, **to read *Harle* as allowing for modification of benefits simply upon a showing that an employee can return to his previous position without restriction would obliterate our seminal decision in *Kachinski* and would undermine the employer's obligation under the Act.** The *Harle* decision did nothing to affect the *Kachinski* guidelines, but merely recognized that the employer need not show job availability when the employee actually returns to work. In addition, permitting an employer to suspend benefits simply upon a showing that an employee can return to his or her previous job without restriction would relieve the employer of any obligation to reintroduce an injured worker into the workforce, contrary to the remedial purpose of the Act.

*Id.* at 630–31, 747 A.2d at 857 (citations and footnotes omitted) (boldface emphasis added). The Supreme Court explained that, inasmuch as "disability" is defined as loss of earning power attributable to the work injury, job availability is the standard by which an employer must establish that a claimant's disability has ceased or decreased. *Id.* at 625, 747 A.2d at 854.

Consistent with *Landmark*, the Supreme Court has consistently required employers to prove job availability in order to justify suspension or modification of benefits, except under a few narrow exceptions where such evidence would be pointless. *See generally, Schneider, Inc. v. Workers' Compensation Appeal Board (Bey),* 560 Pa. 608, 747 A.2d 845 (2000) (totally disabling nonwork-related head injury); *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.),* 550 Pa. 276, 705 A.2d 432 (1997) (incarceration); *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995) (voluntary retirement). The *Harle* case falls within this narrow range of exceptions to proving all four prongs of the *Kachinski* test. However, the present case does not.

The WCJ, and subsequently the Board, appropriately distinguished *Harle* from the present case. As characterized by the Supreme Court itself, *Harle* involved a claimant who had already returned to work. *See Landmark,* 560 Pa. at 630–31, 747 A.2d at 857. In this case, Claimant has not already returned to work. As such, the WCJ and the Board appropriately relied on *Landmark.*

■ In applying *Landmark* to this case, we note several key points. First, Employer concedes that Claimant is not fully recovered. Second, there is no evidence that Claimant's unemployment from Employer was caused by economic conditions such as plant closings or general layoffs. Rather, his unemployment is a direct result of his injury and Employer does not contest that Claimant was injured at work and that he lost his employment because that injury kept him from work for more than a year. Claimant's ability to now return to work is only one requirement set forth by our Supreme Court in *Kachinski* and *Landmark.* Those cases also discuss the remedial nature of the Act and the intent behind the Act of returning claimants to the workforce. While "employees must make a good faith effort to return to the workforce when they are able," and benefits may be modified if "an employee refuses a valid job offer," *Kachinski,* 516 Pa. at 252, 532 A.2d at 380, the Employer is obliged to first show job availability. To rule otherwise, as found by our Supreme Court in *Landmark,* "would obliterate [the Supreme Court's] seminal decision in *Ka-*

*chinski.*" *Landmark,* 560 Pa. at 631, 747 A.2d at 857.

Accordingly, we conclude that the Board and the WCJ correctly determined that, despite the medical evidence that Claimant was able to perform not only his pre-injury job but also any job, Employer failed to carry its burden under *Kachinski* of establishing job availability.

### *ORDER*

**NOW,** January 8, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned mater is hereby **AF-FIRMED.**