**William OAKS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LTV STEEL CORP.),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 20, 1998.
Decided Nov. 19, 1998.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Williams Oaks (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ), which had awarded Claimant partial disability benefits calculated on a quarterly averaged basis, rather than on a weekly or biweekly basis. The problem presented seems to be one of first impression.

The relevant facts are not in dispute. On June 25, 1988, Claimant suffered a right wrist sprain and, pursuant to a Notice of Compensation Payable, he began to receive benefits at a rate of $377.00 per week.[1] On March 19, 1989, Claimant returned to work and his benefits were suspended pursuant to a Supplemental Agreement dated April 6, 1989. Claimant subsequently had his benefits reinstated and suspended on several occasions based on his ability to work.

On March 25, 1994, Claimant, whose benefits had again been suspended at the time, filed a reinstatement petition alleging that, as the result of his June 25, 1988 injury, he was again experiencing a loss of earnings. Employer denied the allegations contained in this petition, and hearings were scheduled before a WCJ. During the hearings, however, Employer conceded that Claimant was entitled periodically to both partial and total disability benefits, but argued that Claimant's post-injury "earning power" for partial disability benefits should be calculated on a quarterly basis consistent with the calculation of his pre-injury average weekly wage under Section 309 of the Workers' Compensation Act[2] (Act). Although Claimant's pay was actually based on an hourly rate, he was normally paid every two weeks. Following his injury and return to his pre-injury job, Claimant's wages were subject to some fluctuation from week to week due to his periodic inability to work, and Claimant argues that his "earning power" for partial disability purposes should be calculated on a weekly or biweekly basis because that is how he actually received his wages.

The problem presents itself because there are two disparate reference points for calculating a claimant's partial disability benefits in Section 306(b) of the Act: the first is the wage he or she has earned prior to his or her disability, denominated as the claimant's **average weekly wage**, which is established by reference to Section 309 of the Act; and the second, denominated as the claimant's "earning power," is what the claimant is actually capable of earning after his or her return to work following the injury. A partially disabled claimant is entitled to two-thirds "of the difference between the **wages** of the injured employe, as defined in [Section 309; "average weekly wage"], and the **earning power** of the employe thereafter; ..." 77 P.S. §512 (emphasis added).

Although the term "average weekly wage" is defined in Section 309 of the Act, the term "earning power" is not a defined term anywhere in the Act.

On March 26, 1996, the WCJ issued a decision and order concluding that Claimant's earning power should be calculated on a quarterly, averaged basis. Although noting

---

1. Claimant's compensation was "capped" at $377.00 per week, as that was two-thirds of the Statewide Average Weekly Wage in 1988 which limits total disability benefits. *See* Sections 306 and 105.2 of the Act, 77 P.S. §§511–512 and 77 P.S. §25.2 respectively (Section 105.2 was added to the Act by the Act of March 29, 1972, P.L. 159); Pennsylvania Bar Institute, Pennsylvania Workers' Compensation Practice and Procedure 58 (1994 edition). Although not stated anywhere in the record or accurately in the briefs of the parties, Claimant's average weekly wage was $913.50, which figure was obtained by reference to one of Claimant's exhibits.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §582. In 1996, this Section was amended by the Act of June 24, 1996, P.L. 350, commonly referred to as Act 57. However, because Section 32.1(a) of Act 57 specifically provides that it does not apply to claims for injuries which are suffered before its effective date, August 24, 1996, the amendments to this section do not apply to Claimant as his injury occurred well before that date.

that there was a lack of relevant case law, the WCJ found that computing Claimant's benefits on a quarterly basis was the most practical and consistent method of computing benefits. The WCJ opined that:

It is neither practical nor logical to require the employer to calculate the claimant's partial disability benefits on either a weekly or biweekly basis, particularly in light of the fact [that] the claimant's initial average weekly wage is calculated on a quarterly basis. It is in the interests of fairness and consistency that the claimant's partial disability benefits be computed on a quarterly basis.

(WCJ Opinion at 3; Findings of Fact No. 7.) Claimant appealed this decision to the Board, which affirmed the decision of the WCJ. This appeal followed.

On appeal,[3] the only issue presented for our review is the proper calculation of Claimant's partial disability benefits for the fixed period of March 29, 1993, through June 6, 1994; Claimant's total disability benefits were reinstated thereafter, and those benefits are not in issue. Claimant argues that his partial disability benefits should be calculated on a weekly or biweekly basis, rather than on a quarterly basis, as the weekly or biweekly method provides the most consistent and equitable method of calculating benefits for both claimants and employers. Employer, using the identical rationale, argues to the contrary, that the benefits should be calculated on a quarterly, averaged basis consistent with Section 309 of the Act, which controls the calculation of the claimant's pre-injury wage.

To illustrate the specific problem at issue in this case, the following diagram shows a segment of the actual wages that Claimant received during the indicated period and also contains the parties' disparate calculations of Claimant's wages for the same period.

| Ending date of Pay Period | Wages Actually Received | Claimant's Calculation [4] | Employer's Calculation [5] |
|---|---|---|---|
| 4/10/93 | $833.25 | $796.46 | $756.10 |
| 4/17/93 | $759.70 | $796.46 | $756.10 |
| 4/24/93 | $519.99 | $644.04 | $756.10 |
| 5/1/93 | $768.09 | $644.04 | $756.10 |
| 5/8/93 | $977.11 | $862.91 | $756.10 |
| 5/15/93 | $748.71 | $862.91 | $756.10 |

(Appendix to Petitioner's Brief at A–12–17; Reproduced Record at 13a–15a.) As an example of the above calculations of the Claimant, Claimant took his pay for each week of the two-week pay period which ended on April 17, 1993, and added the two together and then divided by two to arrive at his

3. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

4. As explained in the text, Claimant calculated his "weekly" wages by first adding the first and second weeks of his pay period (which, during some periods, varied considerably) and dividing that amount by two. (Appendix to Petitioner's brief at A–12–16.) We must point out, however, that if Claimant's wages were to be averaged at all, instead of being calculated on a weekly basis as received, they would be averaged over a thirteen-week period, as Employer advocates, because Claimant's wages are actually fixed by the hour and not by the week or biweekly. *See* Section 309(d), 77 P.S. §582(d).

5. Employer calculated Claimant's weekly wage by taking the amount of wages received over a thirteen-week period and dividing that figure by thirteen.

weekly "earning power" of $796.46, ($833.25 + $759.70 = $1,592.95 ÷ 2 = $796.475).[6]

Using the Employer's method for the period from March 29, 1993, to June 27, 1993, Claimant would receive $1,364.80 in partial disability benefits. Conversely, using the Claimant's biweekly method, Claimant would receive $1,555 in partial disability benefits. Over the entire closed period of partial disability from March 29, 1993, to June 5, 1994, Claimant would receive $6,520.55 in partial disability benefits by using the Employer's method, while he would receive $7,366.25 using his biweekly method. The two methods produce a difference of $845.70. Such a disparity could be considerable over a period of 500 weeks, which is nearly 10 years, the maximum duration for partial disability benefits.

As noted above, the actual wages that Claimant received following his injury fluctuated from week to week, because, presumably, at the beginning of his return to work, Claimant's injury did not permit him to work the number of hours he had worked prior to his injury.

Under Employer's interpretation of the Act, if Claimant's condition continues to improve, during the final weeks of a thirteen-week period a claimant would be physically able to work more, and this increase in hours worked would effectively negate some of the loss of hours that Claimant would have experienced in the beginning of the thirteen-week period. Conversely, under Claimant's biweekly method, Claimant would receive more overall compensation because, at several points during the thirteen-week period, Claimant's wages exceeded his pre-injury wages, i.e., his average weekly wage, thereby rendering Claimant totally ineligible for any partial benefits during that two-week period, but only for that two-week period. Under Employer's calculation, any week that Claimant's wages exceeded his pre-injury wage would have the effect of reducing the total amount of compensation received over the entire quarter, rather than rendering Claimant ineligible for benefits only during a two-week period.

The fluctuation in Claimant's post-injury wages also demonstrates the central problem associated with calculating post-injury earning power, a problem unique to cases involving workers whose wages are fixed by the hour. For the calculation of pre-injury wages, a claimant's exact pay is already known, and, usually constant; therefore, the calculation simply involves "plugging" the figures into the formula contained in Section 309. For post-injury pay or earning power purposes, however, the actual wages received, as here, are subject to fluctuation based on many factors, including the physical limitations of a claimant. With these observations in mind, we will examine the relevant sections of the Act, as well as the parties' arguments.

Section 306(b) of the Act provides the following framework for the calculation of partial disability payments:

> For disability partial in character ... sixty-six and two-thirds per centum of the difference between **the wages** of the injured employe, as defined in section 309, and **the earning power** of the employe thereafter; but such compensation shall not be more than the maximum compensation payable.... The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe **receives** after the injury....

77 P.S. §512 (emphasis added) (footnotes omitted). Section 309 of the Act, 77 P.S. §582 defines the term "wages" as follows:

> Wherever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:
>
> (a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the average weekly wage;
>
> (b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

---

**6.** Claimant's Exhibit A–12 was slightly in mathematical error in several places. In this example his calculations were off by $.015: $796.46 vs. $796.475

(c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

77 P.S. §582.[7] Although we have not had the occasion to address the methodology of calculating a claimant's post-injury earnings in great detail, our research has revealed one recent opinion of this Court that is relevant to the issue, *Stofa v. Workers' Compensation Appeal Board (Florence Mining Co.)*, 702 A.2d 381 (Pa.Cmwlth.1997). In *Stofa*, the claimant sustained a work-related injury to his back in 1987 while working as a miner for the Florence Mining Company. During the period from 1987 to 1993, Stofa returned to college, obtained his teaching certificate and accepted work as a teacher, initially as a part-time substitute teacher, but eventually as a full-time teacher. By contract, Stofa's wages were fixed on an annual basis. Although Stofa actually worked only 9.2 months during the year, *i.e.*, during the school year, he had the option of receiving his wages either on a ten-month payment schedule or on a twelve-month payment schedule. In addition, Stofa's employment contract did not prohibit him from accepting work during the summer vacation period when he was not teaching.

One of the issues in *Stofa* was the proper calculation of the claimant's post-injury wages to determine his earning power. The claimant had successfully argued before the WCJ that his earnings should be calculated by dividing his annual salary by 9.2 months, the amount of time each year that he actually worked as a teacher. However, the Board determined otherwise, concluding that Claim-

ant's wages were fixed by contract as yearly wages, and the Board calculated his post-injury earnings, *i.e.*, his "earning power," in the identical manner that his pre-injury wages were calculated under Section 309 of the Act. On appeal, this Court concluded that:

Under Section 309(c), for purposes of determining his earning power, Claimant's actual wages should be calculated by dividing his annual salary by 52.

*Stofa*, 702 A.2d at 383.

Thus, *Stofa* stands for the proposition that where earnings are fixed yearly by contract, weekly earning power is to be calculated by dividing the yearly salary by 52 weeks, rather than by the number of weeks actually worked. More important, however, *Stofa* also stands for the proposition that "[i]t is not the number of days [that a claimant spends working] but his actual wages ... which is determinative of [a claimant's] earning power under the Act." *Id.* at 383.

Although *Stofa* could perhaps lend support for Employer's argument that earning power for hourly workers should be calculated in the same manner as the average weekly wage of the hourly worker under Section 309 of the Act, we do not believe that *Stofa* applies to the circumstances of this case, where the Claimant's actual wages are not fixed yearly or weekly, but are fixed by an hourly rate and fluctuate based upon the number of hours that Claimant's injury permits him to work.

In addition, it should be noted that, in *Stofa*, we averaged the claimant's earning power for two reasons. First, Stofa's wages were fixed by contract on an annual basis; therefore, limiting claimant's wages only to the time that he actually performed work, *i.e.*, 9.2 months, would not accurately or fairly represent his earning power, *i.e.*, the amount of wages that he received over the entire year. Second, to not average the claimant's wages in *Stofa* would have permitted him to reduce his earning power over the remaining 2.8 months to zero, regardless of his physical ability to perform work. Of course, a loss of earning power unrelated to a

7. Section 309 was amended by Act 57. *See su-*        *pra* footnote 2.

claimant's work injury cannot support an award of compensation. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995). Conversely, averaging Claimant's wages in the present case will not fairly represent the wages that this Claimant actually received during the closed period of disability, nor will it accurately illustrate the loss of earnings that Claimant experienced during that period. Additionally, any loss of earnings, *i.e.*, reduction in earning power, in the present case is the result of Claimant's injury, not because of any choice that Claimant made not to work.

■ In support of an affirmance, Employer asserts that the only fair and expedient method of calculating Claimant's post-injury wages is to use the quarterly averaging method, where *both* reference points would be identical to the computation of the average weekly wage under Section 309.[8] We hold, however, that, although a calculation of a claimant's post-injury earning power on a weekly or biweekly basis, as Claimant actually receives his wages, could cause employers administrative inconvenience, we do not believe that such inconvenience, by itself, is sufficient to justify reducing the total amount of compensation that a claimant receives. The General Assembly established a detailed system for calculating the average weekly wage of a claimant in section 309 of the Act, the first reference point to establish a claimant's partial disability benefits. Absent, however, from the remainder of Section 306(b) are the terms "wage" or "average weekly wage" which, for *post*-injury purposes, are replaced with the term "earning power." If the General Assembly so desired, it could have certainly required post-injury compensation to be calculated in a manner identical to pre-injury wages by again referring to Section 309. The only limitation that the General Assembly chose to place on the term "earning power" in Section 306(b) is the requirement that earning power be no less than the **weekly** amount **received** by the claimant after the injury. Again, absent

from this limitation is any mention of averaging a claimant's actual wages.

■ Moreover, we note that a calculation of a claimant's benefits on a weekly basis, rather than over a thirteen-week averaged period, does not necessarily have to create an administrative hardship for an employer. In their treatise on Workers' Compensation, David Torrey and Andrew Greenberg note that:

A common practice has been for insurance carriers to seek supplemental agreements which suspend a claimant's compensation, with a proviso that every quarter the partial disability will be calculated and paid based upon the accumulated return to work earnings for the past quarter. . . .

A better method, however, is for a supplemental agreement to be entered into paying a predicted or estimated partial [payment] throughout the period of partial disability, and then reconciling the actual partial disability owing, based upon actual earnings over the 13 weeks, at the end of the quarter, and entering into a supplemental agreement. In this way, the claimant will continue to receive income, and the employer need not be overburdened with paperwork. It is appropriate, if the claimant agrees at the outset, in such cases for the employer to have a credit against future partial in the event of overpayment during the period of estimated payments of partial.

David B. Torrey and Andrew E. Greenberg, Pennsylvania Workers' Compensation: Law and Practice §5.32 (1997). Such an agreement would provide a claimant with the compensation properly due to him while not inflicting a large administrative burden on employers and insurance carriers which must calculate a claimant's benefits. We encourage members of the bar to reach such agreements and encourage the Bureau of Workers' Compensation to promulgate regulations which will facilitate these types of agreements, thereby easing any administrative burden.

---

8. Such a methodology, of course, would lend itself to a certain ease of calculation and be easy to apply.

∎ Accordingly, we reverse the order of the Board and remand the matter back to the Board for a calculation of Claimant's partial disability benefits based on wages actually received rather than on an averaged, thirteen-week period.

Reversed and remanded.[9]

### ORDER

NOW, November 19, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed and this case is remanded for a recalculation of Claimant's partial disability benefits on a weekly basis.

Jurisdiction relinquished.

Judge SMITH concurs in the result only.

---

9. Although, as indicated in the opinion, the term "earning power" is not defined in the Act, it has long held the attention of legal writers as the provisions of the Act have been applied over the years since 1915. *See*, for example, Alexander F. Barbieri (Dec'd), Pennsylvania Workers' Compensation and Occupational Disease §5.20(4) (1996):

> [T]he term 'earning power' as spelled out in the Act has an additional limit fixed since the reenactment of 1939. Prior to the fixing of limits in the 1939 amendment, loss of earning power was the same in compensation cases as it was in negligence cases, so that compensation was awardable for loss of earning power, even if earnings after the injury were considerable *or amounted to as much as the man made* before he was hurt.
>
> The 1939 amendment changed this, so that the actual earnings which the employee '*receives*' after the injury must be accepted as his post-injury 'earning power,' despite the fact that it may not truly reflect his earning power in the light of pre–1939 pronouncements. (Emphasis in the original.)

Torrey & Greenberg, Pennsylvania Workers' Compensation: Law and Practice §5.33 (1997):

> The term 'earning power,' one of the statutory components in determining partial disability compensation, is actually a somewhat open-ended concept....
>
> In practice, earning power is usually calculated by using the actual return to work wages. Indeed, the use of the return to work wage amount is mandated by Pennsylvania Workers' Compensation Act Section 306(b) [,77 P.S. §512,] as a measure of earning power when the claimant has actually returned to work:
>
> > the term 'earning power,' as used in this section shall in no case be less than the weekly amount which the employee received after the injury....
>
> This language was added in 1939 to ensure that the partial disability calculation would always take into account the amount of actual wages the employee has received. Under the earlier practice, when percentage disabilities were used, employes often received both wages and continued disability payments, a situation which was widely perceived as inappropriate. (Footnotes omitted.)