# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elliott Company and Constitution : 
States Services, LLC, : 
                Petitioners : 
                           : 
               v. : No. 786 C.D. 2017
                           : Submitted: October 20, 2017
Workers' Compensation Appeal : 
Board (Mattucci), : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: January 11, 2018**

Elliott Company and Constitution States Services, LLC (together, Employer) petition for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) denying and dismissing Employer's Petition to Suspend Benefits (Petition). On appeal, Employer argues it was error to deny the Petition because the evidence established that: any reduction in earnings that Jesse A. Mattucci (Claimant) experienced was based on an economic downturn, not his work injury; and Claimant is earning the same wages as similarly-situated employees and, therefore, is not entitled to partial

disability benefits pursuant to Section 306(b)(1) of the Workers' Compensation Act[1] (Act). It further asserts that the WCJ capriciously disregarded its evidence and did not issue a reasoned decision as required by Section 422(a) of the Act.[2] Because the Board did not err, we affirm.

On May 13, 2013, Claimant sustained a work-related injury to his middle finger on his right hand that was accepted by Employer via a Notice of Temporary Compensation Payable-Medical Only. Employer subsequently issued a Notice of Temporary Compensation Payable, pursuant to which it began paying Claimant $917.00 in disability benefits based on his time of injury Average Weekly Wage (AWW) of $1,945.24. Employer paid Claimant disability benefits until December 26, 2014, when Employer and Claimant entered into a Supplemental Agreement suspending Claimant's benefits based on his performing modified duty work from December 1, 2014, until December 22, 2014, and his receipt of partial disability benefits during that period. The parties agreed to continue to review Claimant's wages and that Employer would pay additional partial disability benefits if necessary.

Employer filed the Petition on June 17, 2015,[3] seeking to suspend Claimant's partial disability benefits because he had returned to his pre-injury job without a loss of wages.[4] Claimant timely responded and denied Employer's allegations.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(1).

[2] 77 P.S. § 834.

[3] On May 19, 2015, Employer filed a Notification of Suspension suspending Claimant's disability benefits as of May 18, 2015, based on its assertion that Claimant had returned to work with earnings equal to or greater than his AWW, which Claimant timely challenged. After receiving testimony from Claimant regarding his inability to make the same amount as he could before his work injury, the WCJ granted Claimant's challenge and directed Employer to reinstate Claimant's temporary total disability benefits.

[4] Employer requested supersedeas, which the WCJ denied.

2

Employer thereafter clarified, at a hearing before the WCJ, that the basis for the suspension was that Claimant is not entitled to ongoing partial disability benefits pursuant to Section 306(b)(1) of the Act, 77 P.S. § 512(1), because any reduction in Claimant's earnings was not related to his work injury and Claimant's post-return to work wages were equal to those of similarly-situated employees.[5]

In support of its Petition, Employer presented both live and deposition testimony of several of its employees, including: Claimant's supervisor (Supervisor); Employer's risk manager (Risk Manager); and the manager in charge of the area in which Claimant worked (Area Manager).[6] Supervisor, Risk Manager, and Area Manager testified that Claimant currently was working at his pre-injury job as an assembler, and this job was within Claimant's medical restrictions set forth in a Functional Capacity Evaluation. (WCJ Decision, Findings of Fact (FOF) ¶¶ 12-13, 15-16.) Supervisor acknowledged that he had informed Claimant that, should Claimant experience any pain or problem with his injured hand, Claimant should stop what he is doing and perform a different task. (*Id.* ¶ 12.) Supervisor explained that, since Claimant's return to work, Claimant has worked 40-hour weeks with overtime being available on non-holiday weekends. Risk Manager acknowledged

---

[5] Relevant to this issue, Section 306(b)(1) of the Act provides that:

[I]n no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than the current wages of a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.

77 P.S. § 512(1).

[6] Employer also presented the deposition testimony of a payroll supervisor in order to authenticate certain exhibits created using data from its payroll department. (FOF ¶ 14.)

3

that there were weeks where Claimant earned wages less than his AWW and other weeks where Claimant earned more. (*Id.* ¶ 15.)

All three of Employer's witnesses testified that Employer has been offering less overtime since 2012 as a result of an economic downturn in the oil industry and that Claimant's injury has nothing to do with the amount of overtime Claimant has been offered. (*Id.* ¶¶ 12-13, 15.) Supervisor explained that the decrease in overtime was part of Employer's "conscientious effort to cut costs." (*Id.* ¶ 12.) Supervisor testified that overtime is offered every non-holiday weekend pursuant to the collective bargaining agreement (CBA) between Employer and Claimant's union, which requires that overtime be offered first to those employees who have the fewest overtime hours and then offered to others in accordance with the number of overtime hours they have. An employee is "charged" with both the overtime hours worked, as well as double the number of overtime hours refused.[7] Thus, if an employee actually works 6 hours of overtime but refuses 2 hours of overtime, the employee is charged with 10 hours of overtime.

Employer also offered various exhibits. Exhibit D compares Claimant's wages with his co-workers and reflects that there were weeks where Claimant was the highest paid worker in his department and weeks where he was not. (Reproduced Record (R.R.) at 222a.) It further shows that there were 13 weeks where Claimant did not earn as much as his AWW, and that, on several occasions, Claimant or another worker earned more than Claimant's AWW. (*Id.*) Exhibit E shows the

---

[7] Employer "charges" its employees with overtime hours that reflect both the actual number of overtime hours that an employee works and the number of overtime hours that an employee refuses to work. The number of hours of overtime charged is used to determine the order in which employees are offered overtime. The effect is that the more overtime an employee refuses the greater amount of overtime he is charged and the less likely he will be offered overtime in the future.

4

amount of weekly overtime charged to each worker between March 28, 2015, and July 18, 2015, and indicates that Claimant was charged as much overtime as two other workers and more than four other workers. (*Id.* at 223a.) Exhibit F compares the amount of overtime Claimant had worked between 2010 and 2015 with that of a co-worker who had worked for Employer for about the same length of time. (*Id.* at 224a-25a.) This exhibit reflects that the number of overtime hours both had worked had decreased in 2014 and that the trend appeared to continue for the part of 2015 that had been completed at the time it was introduced. Exhibit G is a chart reflecting the total number of overtime hours of those working in Claimant's department between January 1, 2015, and September 11, 2015, which reveals that Claimant had worked 441.2 hours of overtime and had refused 58.6 hours of overtime and that 2 other employees had more overtime hours than Claimant. (*Id.* at 226a.)

Claimant testified as follows. He is the most senior employee in his department and is the department's group leader, resulting in him having a slightly higher hourly wage ($0.75 more an hour) than his co-workers. Following his injury, Claimant returned to work as an assembler with restrictions from his treating physician, and there are certain job duties that are beyond those restrictions. In the single-stage area of Claimant's department, where smaller turbines are assembled, lifting some of the required "plates and tightening certain bolts with wrenches . . . [were] above and beyond his restrictions." (FOF ¶ 17.) In the multi-stage area, where larger turbines are assembled, some of the required "lifting, pushing, pulling, and torqueing . . . [were] beyond his restrictions." (*Id.*) Although Claimant has worked in both areas since his return to work, he always works with someone else in the multi-stage area due to his restrictions. Claimant, who is a union shop steward responsible for reviewing Employer's overtime policies, explained the overtime

5

process, including the requirement that the worker with the lowest overtime hours be offered overtime first and charging those who refuse overtime with double the number of hours offered. Additionally, Claimant explained that the CBA authorizes Employer to skip over a worker for overtime purposes if the worker "is unable to carry his shift," meaning that the worker is unable to perform all of the duties associated with the job classification. (*Id.*) Because Claimant cannot perform all of the duties required by his job, he has been skipped over for overtime. In particular, Claimant noted that, absent the restrictions related to his work injury, he would be able to work alone in the multi-stage area and Employer would not be able to skip over him on the basis that he cannot carry his shift and offer the overtime to others.

A co-worker (Co-Worker) from Claimant's department testified, confirming the overtime policy and the ability of Employer to skip over a worker who cannot carry his shift in offering overtime. Co-Worker indicated that he heard Supervisor and Area Manager inform Claimant that Claimant could not work overtime in the multi-stage area due to Claimant's work restrictions. Co-Worker explained that he frequently works with Claimant in both the single-stage and multi-stage areas and has to assist Claimant in performing certain job duties that Claimant is unable to perform.

The WCJ did not find the testimony of Supervisor, Risk Manager, and Area Manager credible or persuasive that the number of overtime hours Employer offered its employees have been greatly reduced due to a downturn in its business. The WCJ explained that the wage evidence presented by Employer revealed that, between March 5, 2015, and July 2, 2015, Claimant and other workers in his department earned wages that were **greater** than Claimant's AWW on multiple occasions. Further, he observed that Employer's witnesses testified that Claimant and his 5 co-

6

workers were working 40-hour work weeks and overtime continued to be available to the workers in that department. As for Employer's exhibits comparing Claimant's overtime hours and wages to those of his co-workers, the WCJ explained that such exhibits were "difficult to accurately compare Claimant's time of injury [AWW] and Workers' Compensation benefits combined with that of the other [workers] in the Claimant's department." (FOF ¶ 19.) For example, he noted that Exhibit G reflected that a number of employees refused significant amounts of overtime compared to the amount of overtime they worked. Further, the WCJ observed that there was no evidence that any of Claimant's co-workers were a group leader, earning the same increased hourly wage as Claimant, and, therefore, were similarly situated to Claimant.

Based on these findings of fact, the WCJ concluded that Employer did not meet its burden of proving that Claimant's current loss of earnings is not caused by his work injury, but by a downturn in Employer's business, or that the combined amount Claimant receives in wages and Workers' Compensation benefits exceed the wages of similarly-situated employees. (*Id.*; WCJ Decision, Conclusions of Law (COL) ¶¶ 2-3.) Accordingly, the WCJ denied and dismissed the Petition and directed Employer to continue to pay Claimant temporary partial disability benefits based on the difference between Claimant's time of injury AWW and his current earnings. (WCJ Order.)

Employer appealed to the Board, arguing that the WCJ's Decision was not supported by substantial, competent evidence. The Board concluded that substantial and competent evidence supported the WCJ's Decision and that, because the WCJ

did not credit Employer's evidence, Employer could not meet its burden of proof on the Petition. (Board Op. at 6-7.) Employer now petitions this Court for review.[8]

On appeal, Employer concedes that Claimant has ongoing restrictions due to his work injury, (Employer's Br. at 16), but argues it presented overwhelming evidence, unchallenged by Claimant, that supported its contention that the reduction in Claimant's earnings was due to an economic downturn, not his work injury. According to Employer, it had clearly satisfied its burden of proof with: a) the unrefuted testimony of its witnesses; b) Exhibit D, which shows that Claimant's average weekly wage for an 18-week period was $1,642.51, $302.73 less than his AWW; and c) Exhibit F, which shows a drop in overtime hours for Claimant and another similarly-situated employee between 2014 and 2015. (R.R. at 222a, 224a-25a). Employer further asserts that Claimant is not entitled to ongoing temporary partial disability benefits pursuant to Section 306(b)(1) of the Act because he is earning the same wages as all similarly-situated employees. For these reasons, Employer argues, it was error to deny the Petition.

In workers' compensation parlance, the term "disability" is synonymous with a loss of earning power. *Landmark Constructors, Inc. v. Workers' Comp. Appeal Bd. (Costello)*, 747 A.2d 850, 854 (Pa. 2000). Pursuant to Section 306(b)(1) of the Act, an employee whose earning power is decreased by his work injury is entitled to partial disability benefits in the amount of "sixty-six and two-thirds per centum of the difference between the [employee's pre-injury AWW] and the earning power of the employe[e] thereafter[.]" 77 P.S. § 512(1). This provision is limited to a partial

---

[8] "Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

8

disability that is "caused by the compensable injury." *Id.* "A claimant whose post-injury earnings are less than the pre-injury earnings is not automatically entitled to partial disability benefits." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. PA, Inc.)*, 109 A.3d 787, 793 (Pa. Cmwlth. 2015) (citing *Harle v. Workmen's Comp. Appeal Bd. (Telegraph Press, Inc.)*, 658 A.2d 766, 769 (Pa. 1995)). "If the reduction in earnings is not tied to a loss of earning power attributable to the work injury, no disability benefits are due." *Id.* One such circumstance is where a claimant's earnings are reduced due to economic circumstances. *Id.* at 796. The employer bears the burden of proving its entitlement to a suspension of a claimant's benefits. *Landmark Constructors, Inc.*, 747 A.2d at 853 (stating the employer has the "burden of proving entitlement to a modification of benefits").

Here, Employer attempted to meet its burden of proof through the testimony of Supervisor, Risk Manager, and Area Manager, and the introduction of multiple exhibits. However, the WCJ did not find Employer's witnesses' testimony credible or persuasive that Claimant's loss of earnings was related to an economic downturn, and not his work injury. The WCJ was further unpersuaded by Employer's evidence comparing Claimant's and his co-workers' wages. The WCJ explained his evidentiary weight determinations based on what the WCJ considered inadequacies in Employer's evidence. (FOF ¶ 19.) The WCJ explained that, notwithstanding the witnesses' testimony of an economic downturn, they also testified that the workers in Claimant's department were still working full 40-hour weeks and were working overtime on non-holiday weekends in accordance with the CBA provisions. He further pointed out that Employer's evidence showed that many workers, including Claimant, were earning **more** than Claimant's AWW on numerous occasions. (*Id.*) Finally, the WCJ expressed that, because the overtime provisions of the CBA

9

allowed workers to refuse overtime, it was difficult to accurately compare Claimant's combined wages and partial disability benefits with the earnings of other workers in his department. The WCJ also observed that there was no evidence that any of Claimant's co-workers were a group leader, earning the same increased hourly wages as Claimant, and, therefore, were similarly situated to Claimant. The WCJ concluded that some of the earnings against which Claimant's earnings were being compared were lower due to those workers refusing to work overtime, and that these co-workers were not similarly situated to Claimant.

In arguing its evidence satisfied its burden of proof, Employer essentially requests this Court to reweigh the evidence and find in its favor. However, it is well-settled that the WCJ is the fact-finder, and the review of the witnesses' testimony and determinations as to the weight and credibility of that evidence are solely for the WCJ. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Serv. and Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). The WCJ's explanations for why he rejected Employer's evidence as not credible or persuasive are supported by the record. Despite the testimony of Employer's witnesses that it had cut overtime hours, overtime was being offered on non-holiday weekends and there were multiple weeks during which workers earned **more** than Claimant's AWW. Furthermore, the fact that workers could refuse offered overtime makes it difficult to determine whether the decrease in earnings was related to an economic downturn or to the workers' decision not to work overtime and to compare Claimant's earnings to those co-workers, who were not

10

group leaders earning the same hourly wage as Claimant. Moreover, the fact that Claimant, on average, was making less than his AWW is not dispositive given the two competing explanations offered for that reduction: Employer's conscientious effort to cut costs because of the economic downturn in the oil industry and the reduction of overtime offered to Claimant because of his inability to carry his shift due to the conceded restrictions related to his work injury. The WCJ weighed the evidence, found Employer's evidence not credible or persuasive, and provided an explanation that is supported by the record. We will not disturb that determination. Therefore, because the WCJ did not credit Employer's evidence, Employer could not meet its burden of proving a suspension based on the assertion that Claimant's reduction in earnings was not caused by his work injury.

Employer also argues that the WCJ capriciously disregarded its evidence and did not provide a rational basis for rejecting the overwhelming evidence that Claimant's reduction in earnings was due to an economic downturn and Claimant currently was earning the same wages as similarly-situated employees.

Section 422(a) of the Act requires that a WCJ issue a reasoned decision and provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately

11

the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. To be "reasoned," an opinion must allow for adequate appellate review by the Board without further elucidation and by this Court under the applicable review standards. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). Moreover, "[a] capricious disregard of the evidence . . . is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp./Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). However, a "WCJ is not required to accept even uncontradicted testimony" and the "express consideration and rejection" of evidence as not credible is not a capricious disregard of that evidence. *Id.* at 144-45.

As is apparent from our above analyses, the WCJ's Decision permitted this Court to perform effective appellate review of the issues resolved therein. The WCJ made findings of fact and conclusions of law, stated his rationale for his decision denying the Petition, resolved conflicts in credibility, and explained the reasons why he rejected Employer's evidence. Thus, the WCJ's Decision was reasoned under Section 422(a). Additionally, there was no capricious disregard because the WCJ expressly considered and rejected Employer's evidence as not credible or persuasive and provided explanations, supported by the record, for that determination. Thus, it cannot be said that the WCJ's determination was "a deliberate and baseless disregard" of Employer's evidence. *Williams*, 862 A.2d at 145.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elliott Company and Constitution : 
States Services, LLC, : 
                    Petitioners : 
               : 
          v. : No. 786 C.D. 2017
               : 
Workers' Compensation Appeal : 
Board (Mattucci), : 
                Respondent : 

# O R D E R

NOW, January 11, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER**, Judge