IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Hill, : 
               Petitioner : 
               : 
       v. : 
               : 
Workers' Compensation Appeal : 
Board (Wirerope Works, Inc.), :    No. 838 C.D. 2017
              Respondent :    Submitted: January 5, 2018


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: February 20, 2018

      David Hill (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) that awarded Claimant total disability benefits from September 28, 2012 through November 12, 2012, and partial disability benefits from November 13, 2012 through February 4, 2013, but suspended Claimant's benefits thereafter based on his return to work with restrictions that allowed him to perform his pre-injury position. Upon review, we affirm.

      On August 22, 2012, Claimant began working for Wirerope Works, Inc. (Employer) as a general laborer. Notes of Testimony (N.T.) 9/16/2013 at 10; N.T. 12/20/2013 at 8. On September 28, 2012, a 1000-pound bobbin of wire shifted and

fell on Claimant's left hand, resulting in a crush injury for which Claimant was hospitalized and underwent surgery. N.T. 9/16/2013 at 11, 14-15.

On October 1, 2012, Employer issued a Notice of Temporary Compensation Payable (NTCP) acknowledging Claimant's September 28, 2012 work injury and paying Claimant a weekly compensation rate of $444.00[1] beginning September 29, 2012. *See* Exhibit J-01. Claimant returned to work in a modified capacity with restrictions[2] on November 12, 2012. N.T. 9/16/2013 at 18. On November 20, 2012, Employer issued a Notice Stopping Temporary Compensation and a Notice of Workers' Compensation Denial based on the fact Claimant had returned to work without a wage loss.[3] *See* Exhibits J-02 & J-03.

On February 4, 2013, Claimant's work restrictions were reduced to a 40-pound lifting restriction. On March 15, 2013, Employer terminated Claimant for poor on-job performance.

On July 1, 2013, Claimant filed a claim petition with the Bureau of Workers' Compensation seeking lost wages and medical expenses based on his September 28, 2012 injury. *See* Claim Petition. Employer filed its answer to the Claim Petition on July 22, 2012. *See* Answer to Claim Petition. Following multiple

---

[1] Claimant had not worked thirteen calendar weeks at the time of the injury and did not have a fixed weekly wage. Employer arrived at Claimant's average weekly wage of $498.80 by multiplying Claimant's $12.47 hourly wage by forty (40), which resulted in a weekly compensation rate of $444.00. *See* Statement of Wages, Exhibit J-07.

[2] Upon his return to work on November 12, 2012, Claimant was limited to performing only right-handed work. *See* Restriction Slips, Exhibit J-3. On December 3, 2012, his restrictions were changed to a 30-pound lifting limitation with increased left hand use. *Id.*

[3] On November 26, 2012, Employer filed a Statement of Wages with the Bureau of Workers' Compensation that indicated the same average weekly wage and weekly compensation rate as previously paid pursuant to the October 1, 2012 NTCP. *See* Exhibit J-07.

hearings,[4] the WCJ issued a decision and order on March 10, 2016, suspending Claimant's benefits after February 4, 2013, which Claimant appealed to the Board on March 31, 2016. The Board affirmed the WCJ's decision by opinion dated May 23, 2017. Claimant petitioned this Court for review.[5]

Claimant raises the following issues on appeal:

1. Whether, after February 4, 2013 and at the time of the termination of his employment on March 15, 2013, Claimant/Petitioner David Hill's work injury and restrictions continued to cause earnings loss and he was performing modified duty such that the WCJ and WCAB erred in suspending Hill's indemnity benefits as of February 4, 2013 and not awarding the same after his termination?

2. Whether Claimant/Petitioner David Hill was entitled to the presumption that his loss of earnings as of February 4, 2013 and March 15, 2013, was causally related to his work injury?

---

[4] The WCJ held evidentiary hearings in this matter on September 16, 2013, December 20, 2013, March 5, 2014, March 7, 2014, June 25, 2014, and July 18, 2014.

[5] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n. 4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workers' Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

3

Claimant's Brief at 4.

Claimant argues that the Board erred by suspending his indemnity benefits as of February 4, 2013, and not awarding benefits after his termination. *See* Claimant's Brief at 15-21. Claimant further argues that he was entitled to a presumption that his post-termination loss of earnings was causally related to his September 28, 2012 work injury. *Id.* We disagree.

In workers' compensation matters, the term "disability" is synonymous with "loss of earning power." *Consol PA Coal Co. - Enlow Fork Mine v. Workers' Comp. Appeal Bd. (Whitfield)*, 971 A.2d 526, 529 (Pa. Cmwlth. 2009). "A claimant is entitled to workers' compensation disability benefits where the work injury results in a loss of earning power." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Services, Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015). "A suspension of disability benefits is appropriate where the work injury no longer impairs the claimant's earning power." *Id.*; *see also Latta v. Workmens' Comp. Appeal Bd. (Latrobe Die Casting Co.),* 642 A.2d 1083 (Pa. 1994).[6]

Where an employee returns to work with medical restrictions and under a suspension of benefits and is subsequently terminated, that employee is entitled to a presumption that any loss of earning capacity is causally related to the continuing work injury. *See Latta*, 642 A.2d at 1085. Pursuant to this presumption, an employee so terminated is entitled to a reinstatement of benefits absent proof from the employer that it provided actual work within the employee's restrictions or that the employee's loss of earning power is unrelated to the work injury. *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 174 (Pa. Cmwlth. 2004).

---

[6] In fact, a suspension of benefits acknowledges a continuing medical injury, but discontinues benefits nonetheless because the injury no longer affects the claimant's earning power. *See Latta*, 642 A.2d at 1085.

4

Employees returning to their pre-injury job without restriction, however, are not entitled to this presumption. *Trevdan Bldg. Supply v. Workers' Comp. Appeal Bd. (Pope)*, 9 A.3d 1221, 1224 (Pa. Cmwlth. 2010). Employees returning to their pre-injury jobs *with restrictions that do not require a modification of duties* are considered to have returned to work "without restriction," and are *not* entitled to the presumption that their loss of earning power is causally related to their injury. *Folk v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 802 A.2d 1277, 1280 (Pa. Cmwlth. 2002).

Here, Claimant began working for Employer on August 22, 2012. N.T. 9/16/2013 at 10. He suffered a crush injury on September 28, 2012, when a 1,000-pound bobbin of wire fell on his left hand. *Id.* at 11, 14-15. Claimant did not return to work until November 12, 2012, when he returned on modified duty with restrictions. N.T. 9/16/2013 at 19; N.T. 12/20/2013 at 15-16. Claimant continued to work in a modified capacity until February 4, 2013, when his restrictions were reduced to a 40-pound lifting restriction. N.T. 9/16/2013 at 55.

Claimant contended that, under the 40-pound lifting restriction, he was only able to perform his regular job duties on certain machines. N.T. 9/16/2013 at 55. He further asserted that certain of his pre-injury duties required lifting and moving bobbins in excess of 40-pounds, but that he would use a push bar and hoist to move and lift those bobbins. *Id.* at 68-71. Claimant stated that he had been instructed to change spindle shafts weighing between 20 and 80 pounds by hand,[7] but that no one trained him to use a hoist or a jack to lift spindles, and that no one ever disciplined him for lifting them by hand. N.T. 7/18/2014 at 19, 21-28. Claimant

---

[7] The WCJ also received a report from Claimant's physical therapy provider that indicated that lifting certain spindles could require up to 84 to 88 pounds of force. *See* Exhibit C-21.

5

worked under the 40-pound lifting restriction until his termination on March 15, 2013. N.T. 9/16/2013 at 20.

Melinda Fryer, Employer's human resource manager, also testified before the WCJ. *See* N.T. 12/20/2013. Ms. Fryer explained that Employer hired Claimant as a general laborer subject to a 520-hour probationary period during which he would get experience in a variety of different jobs before then bidding on the job he would like to attain.[8] *Id.* at 12-13. Fryer stated that, when Claimant was injured, he was working in the winding department under the plant-wide 40-pound lifting restriction. *Id.* at 13. She further stated that when employees were required to move objects weighing in excess of 40 pounds, they were required to do so by using an electric lift or with the help of a coworker. *Id.* at 13-14. Fryer explained that on February 17, 2013, Claimant bid on and was awarded the position of Strander II, the physical requirements of which were no different than the job Claimant had been working at the time of his injury. *Id.* at 18-19. Fryer further acknowledged that Employer's job descriptions in the winding department and for the Strander II position both occasionally required lifting up to 100 pounds, but that job descriptions notwithstanding, employees had been instructed to lift no more than 40 pounds by themselves since 2007 or 2008. *Id.* at 42-49. Further, Fryer noted that Employer had posted notices throughout its facility explaining the company-wide 40-pound lifting restriction and warning employees that they could be disciplined for violating the restriction. *Id.*

Mr. Kevin Confer, Employer's second shift foreman and Claimant's supervisor when Claimant worked as a Strander II from February 2013 through

---

[8] As Ms. Fryer explained: "[Claimant], as well as anyone else, was brought in as a general laborer. We are a union shop. In order to un-become a general laborer, you have to bid jobs." N.T. 12/20/2013 at 11.

6

March 15, 2013, testified that he monitored Claimant to ensure Claimant properly performed his job and contributed to the timely production of Employer's product. N.T. 3/5/2014 at 7-9. Mr. Confer noted deficiencies in Claimant's job performance that included letting wire bobbins "run dry," which caused backups and cut strands that resulted in decreased production. *Id.* at 9, 77-78. Confer also noted occasions where Claimant ran his machines on the slow setting as opposed to the fast setting, as required to maintain safe operation. *Id.* at 10. Additionally, Confer testified that Claimant had left the latch on his machine open on occasion, a major, and possibly fatal, safety violation. *Id.* at 77. Confer was aware of Claimant's 40-pound lifting restriction, but indicated that such restriction did not require any modification of Claimant's job duties due to Employer's plant-wide 40-pound lifting restriction. *Id.* at 12-14.

Gary Stryker, Employer's superintendent, oversees all aspects of plant production and personnel. N.T. 3/7/2014 at 6-7. Mr. Stryker testified that Employer has a plant-wide 40-pound lifting restriction for all employees and that signs and written notices of this restriction appear throughout the plant. *Id.* at 14-15. While conceding that employees occasionally are required to lift in excess of 40 pounds, Stryker explained employees are expected to complete such lifting with the help of a coworker or electric hoist, and will be reprimanded by management for failing to do so. *Id.* at 16-19. As a result of this policy, Stryker explained Claimant's 40-pound lifting restriction had no impact on his ability to perform his job duties. *Id.* at 20.

Donald Plants, Claimant's supervisor, testified that he was aware of Claimant's lifting restriction, but that such restriction made him no different from Employer's other employees, all of whom were directed to lift not more than 40

7

pounds without the aid of a crane, hand truck, forklift, or an electric hoist. N.T. 6/25/2014 at 11-12, 14. Plants explained also that, throughout his probationary employment period, Claimant experienced constant difficulties in performing his job duties, including running wire bobbins dry and leaving latches open, which Plants explained presents a major safety hazard. *Id.* at 13-16, 18. Additionally, Plants would occasionally see Claimant lifting wire bobbins that weighed more than 40 pounds by hand, against Employer's restriction. *Id.* at 15-16. At those times, Plants would verbally correct Claimant and report the behavior to Mr. Stryker. *Id.*

As this Court has previously noted:

> The WCJ is the fact finder, and it is solely for the WCJ… to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017), *reargument denied* (Apr. 3, 2017), *appeal denied*, 173 A.3d 252 (Pa. 2017) (internal citations, quotations, and brackets omitted).

Here, the WCJ found credible Claimant's testimony regarding his training and on-job performance. Findings of Fact (F.F.) No. 138. The WCJ also found credible the testimony of Fryer, Stryker, Confer, and Plants that a 40-pound lifting restriction applicable to all employees existed throughout Employer's facility. F.F. No. 133. Further, the WCJ found credible Stryker's, Confer's, and Plants' testimony that Claimant's job could be performed without lifting more than 40

8

pounds. F.F. No. 134. Additionally, the WCJ credited Confer's and Plants' testimony regarding Claimant's difficulty performing his job, and Stryker's testimony that Claimant was fired for his inadequate job performance. F.F. Nos. 135 & 136. Finally, while the WCJ found the testimony supported the notion that Claimant did not engage in any willful misconduct regarding his job responsibilities, the WCJ also expressly noted that Claimant's testimony was inadequate evidence upon which to base a finding that Claimant's work injury and subsequent restrictions caused Claimant's deficient job performance. F.F. Nos. 137 & 139.

As a result of these credibility determinations, which we must accept, we find that substantial record evidence supports the WCJ's finding that Claimant had returned to work on February 4, 2013, without restriction because his medical restrictions did not require a modification of his duties. Therefore, the WCJ properly suspended Claimant's benefits following his February 4, 2013 return to work and further properly determined that Claimant was not entitled to a presumption that his wage loss, following his March 15, 2013 termination, was related to his work injury. *See Folk*, 802 A.2d at 1280.

Accordingly, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

9

David Hill,                                    :
                    Petitioner          :
                                               :
              v.                               :
                                               :
Workers' Compensation Appeal        :
Board (Wirerope Works, Inc.),        :          No.  838 C.D. 2017
                    Respondent       :

O R D E R

AND NOW, this 20th day of February, 2018, the order of the Workers'

Compensation Appeal Board, dated May 23, 2017, is hereby AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge